Christopher BRISTER, Plaintiff/Appellant,

v.

James E. IKENBERRY, Jr., William V. Tull, Brian Berger, James R. Moore, Midwestern Power Line, Inc., and Ozark Border Electrical Cooperative, Defendants/Respondents.

No. ED 92993.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 22, 2009.

James C. Owen, Chesterfield, MO, for Plaintiff/Appellant.

John A. Clark, Poplar Bluff, MO, for Defendants/Respondents, James E. Ikenberry, Jr., William V. Tull and James R. Moore.

James W. Childress, St. Louis, MO, for Defendant/Respondent Brian Berger.

James E. Laramore, Cape Girardeau, MO, for Defendant/Respondent Midwestern Power Line, Inc.

James E. Spain, Kristi J. Booker, Poplar Bluff, MO, for Defendant/Respondent Ozark Border Electric Cooperative.

Before SHERRI B. SULLIVAN, P.J., ROBERT G. DOWD, JR., J., and PATRICIA COHEN, J.

SHERRI B. SULLIVAN, P.J.

*Introduction*

Christopher Brister (Appellant) appeals from the summary judgment entered by the trial court in favor of Ozark Border Electric Cooperative (Respondent) on Appellant's landowner liability claim against Respondent for injuries Appellant sustained while working as an employee of

Midwestern Power Line Inc. (MPL), a contractor of Respondent, on Respondent's property. We reverse and remand.

*Factual and Procedural Background*

On May 31, 2002, Appellant was severely injured while installing split bolts on a cross-arm of an electric power pole and connecting the primary neutral to the ground when he was shocked by approximately 8,330 volts of electricity. At the time of his injury, Appellant was employed as a digger or groundman by MPL, which had contracted in October 2001 with Respondent, an electrical cooperative regulated under Chapter 394,[1] to carry out a rural electric project called "Missouri–33–Butler" (the Project). The Project involved the relocation of an existing power line running alongside Highway 60 owned by Respondent to a new power line location necessitated by a Missouri Department of Transportation road project to expand Highway 60 from two to four lanes. In carrying out the relocation, the objective was to supply power to customers without interruption. The majority of work done by MPL was on energized lines, while Respondent estimates that about 20% of its work was done on energized lines. Respondent hired MPL because its employees primarily work on energized lines, according to Stanley Estes (Estes), Respondent's General Manager.

The contract between MPL and Respondent was called the "Missouri–33–Butler, 2002 System Improvement Contract" or "Distribution Construction Contract (Labor Only)" (the Contract).

Appellant was installing split bolts on the cross-arm of the pole on the day of the accident because the split bolts had not been installed while the pole was on the ground, which is how the installation is normally done.[2] Once the Project was deemed "finished," a "clean-up" or "punch" list was composed of tasks remaining to be completed. One item on the punch list was to install the split bolts on the pole that was no longer on the ground, but mounted in the ground with the lines attached and energized. The pole and line involved had been constructed and put in place by MPL. The line was energized at 14,400 volts when Appellant climbed the pole to install the split bolts.

Appellant had not worked with energized lines before. Appellant did not use and was not advised to use a bucket truck, rubber gloves or sleeves when making the repairs. When Appellant was working on the line, the breaker switch had been set to the "normal re-close" position. The normal re-close position causes the power to reestablish its continuity despite contact with the line, and therefore allows a person making contact with the power line to be continually shocked as opposed to the power cutting off after the person's initial contact with the line. The "non-reclose" position, or protective relaying setting, would have caused the power to shut off once Appellant made contact with the line and endured the initial shock.

On May 29, 2007, Appellant filed suit against Respondent and the other named

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. Steve Seematter (Seematter), Respondent's Engineering Supervisor, testified in his deposition that split bolts are necessary because the cross arm of a pole can crack with time if there is horizontal pressure on the cross arm, and the split bolt provides additional strength to the cross arm. The split bolt that was being installed by Appellant at the time of his injury should have been done on the ground, and should not have been installed while the lines were energized, according to Seematter, Estes and Chuck Reinbott (Reinbott), Respondent's Operations Manager.

individual respondent MPL employees for his injuries.[3] Appellant's suit against all other individual respondents remains pending. This appeal only concerns Respondent, with regard to the trial court's summary judgment in its favor, as follows.

Respondent filed its motion for summary judgment on July 21, 2008. On August 5, 2008, Appellant filed a motion for leave to file a first amended petition (FAP), and a request for continuance of Respondent's summary judgment motion in order for Appellant to conduct discovery. On January 20, 2009, Appellant filed his response to Respondent's summary judgment motion, and Respondent thereafter filed its reply thereto.

Count I of Appellant's FAP alleged that the respondents who were employees and/or owners of MPL, had not trained Appellant as a lineman and that he had never worked close to an energized electrical line. Appellant also alleged that rubber gloves and rubber sleeves were not provided to him by them, which were required for work in close proximity to energized power lines and that he had not been trained to use rubber gloves and sleeves in these circumstances. Appellant claimed the individual respondents were negligent in directing Appellant to complete the installation of the split bolt on the subject pole in close proximity to energized lines without directing Respondent to de-energize the line; without providing the proper training and safety equipment; and in failing to provide Appellant an insulated bucket truck lift from which to work.

In Count II of his FAP, Appellant claimed Respondent had contractual right of control and actual control over the details of the manner in which work was performed by MPL and the physical activities of the employees of MPL at the time of Appellant's injuries. Appellant further alleged Respondent was aware that a dangerous condition existed with regard to the power lines and poles which involved an unreasonable risk of danger to Appellant.

Respondent's motion for summary judgment asserted that Respondent was not liable to Appellant as the landowner because MPL was an independent contractor and Appellant was covered under MPL's workers' compensation policy. Respondent further averred that it had relinquished possession and control of the premises to MPL and that Respondent did not maintain substantial control over either the physical activities of MPL and its employees or the details of the manner in which the work was done so as to impose liability, either under a theory of negligence or vicarious liability.

On March 16, 2009, after hearing argument from both parties, the trial court granted summary judgment in favor of Respondent. The trial court found that Respondent "presented sufficient summary judgment facts to establish that it did not control the manner in which the work was done" and that none of the facts "establish that [Respondent] sufficiently controlled the physical activities of [MPL] employees or the details of the manner in which the work was done such as to impose liability on [Respondent]." Upon Appellant's request, the trial court amended its judgment to find there was "no just reason for delay of the appeal of this judgment pursuant to Rule 74.01(b)." This appeal follows.

### Points on Appeal

In his first point, Appellant contends that the trial court erred in granting Re-

---

3. MPL filed a motion to intervene as a party plaintiff that was granted by the court on April 28, 2008. On April 30, Respondent, as a third-party plaintiff, filed a third-party petition against MPL.

spondent's motion for summary judgment because Respondent did not meet its burden of proof concerning the independent contractor exception to the general rule of a landowner's liability to an invitee, as the court simply assumed that MPL was an "independent contractor" to whom Respondent relinquished "possession and control of the premises" when there were genuine issues of material fact regarding both of those necessary findings.

In his second point, Appellant maintains that the trial court erred in granting Respondent's motion for summary judgment because the facts presented by Appellant, in a light most favorable to him, and giving him the benefit of all inferences, showed that there was a genuine issue of material fact that Respondent had substantial control over either: 1) the physical activities of the employees of the independent contractor, MPL; or 2) the details of the manner in which the work was done by MPL.

### Standard of Review

The standard of review for the granting of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.banc 1993). When reviewing a trial court's grant of summary judgment, this court views the record in the light most favorable to the party against whom judgment was entered. *Id.* Summary judgment will be upheld on appeal only if this court finds that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Topps v. City of Country Club Hills*, 236 S.W.3d 660 (Mo.App. E.D.2007).

### Discussion

 The general rule is that a landowner owes a duty to use reasonable and ordinary care to prevent injury to invitees.

*State ex rel. Union Elec. Co. v. Dolan*, 256 S.W.3d 77, 83 (Mo.banc 2008); *Restatement (2d) of Torts* sec. 343 (1965). An employee of an independent contractor performing work contracted for by the landowner is one such invitee. *Dolan*, 256 S.W.3d at 83.

 An exception to this rule arises when:

the landowner relinquishes possession and control of the premises to an independent contractor during a period of construction. [Then] the duty of care shifts to the independent contractor. The landowner, no longer considered the possessor of the land, is thus relieved of potential liability. On the other hand, to establish that the landowner retained possession and control of the premises and the attendant duty of care, [the plaintiff] must show that the landowner controlled the jobsite and the activities of the contractor. As the Court of Appeals stated in *Halmick [v. SBC Corporate Servs., Inc.*, 832 S.W.2d 925, 929 (Mo.App. E.D.1992) ], "the owner's involvement in overseeing construction must be substantial ... the control must go beyond securing compliance with the contracts; the owner must be controlling the physical activities of the employees of the independent contractors or the details of the manner in which the work is done."

*Matteuzzi v. Columbus P'ship, LP.*, 866 S.W.2d 128, 132 (Mo.banc 1993).

 The Contract stated that MPL was an independent contractor. However, we look further to determine whether MPL was, indeed, Respondent's independent contractor. As a general rule where an owner of property employs a builder to do construction work for a stipulated price and retains no power to direct the manner of doing the work or the right to control

the builder in the performance of the contract, such builder is an independent contractor for whose negligent acts the owner is not liable. *Martin v. First Nat. of Independence Co.*, 372 S.W.2d 919, 923 (Mo.1963) (citations omitted). In the instant case, we discern and glean factual evidence from the record that belies the conclusion that Respondent retained no power to direct the manner of doing the work or the right to control MPL in the performance of the Contract. We set out these facts as follows.

Estes, Respondent's General Manager, and Reinbott, Respondent's Operations Manager, testified that MPL had been Respondent's exclusive contractor for 13 years, since 1995. Respondent paid MPL on an hourly basis, not by the job. MPL employee Keith Willis (Willis) stated under oath in his affidavit that there were daily meetings between MPL's chief of personnel and Respondent's management where Respondent instructed MPL on work MPL was to do or cease; or whether they were to switch from one job to another job. Reinbott testified that Respondent could and did pull employees off the Project to work on other jobs, such as when Appellant himself was pulled off the Project at Respondent's direction and sent to work on a large storm repair. Such rearrangements had been carried out before, from 1997 until 2002. Brian Berger (Berger), MPL crew foreman and one of the four MPL employees present on the day of Appellant's accident, testified that "almost every morning [MPLJ's superintendent, James Ikenberry, Jr. (Ikenberry)], met with [Respondent]'s management personnel at [Respondent]'s office to discuss the progress of jobs and job orders." Willis specified these meetings as between Ikenberry and Estes or Reinbott. Berger also averred that during his six years of employment with MPL, MPL was the exclusive contractor used by Respondent, and that at the conclusion of all of their jobs, Respondent would supply a clean-up list of work for MPL to perform.

The work performed by MPL is part of the regular business of Respondent, and they are not engaged in distinct occupations. Additionally, Willis stated in his affidavit that MPL employees received training from Respondent by practicing climbing Respondent's poles. Willis also states in his affidavit that Respondent supplied all necessary materials for MPL's use on any project, not just the Project which MPL was working on for Respondent, even though the Contract states that MPL would be responsible for all tools and equipment for the Project. Willis also stated that there was two-way radio contact between Respondent's dispatcher and MPL employees on a number of subjects that had to do with the manner in which the MPL employees would do their work. Estes admitted in his affidavit that he assigned Reinbott to supervise the MPL crew in which Appellant was working. All of these factors point toward MPL not being an independent contractor for Respondent, and correspond to those set forth in the Restatement (Second) of Agency, sec. 220 (1958),[4] which our courts

4. Section 220 provides: Definition of Servant
(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.
(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;

have cited with approval as a helpful aid in " 'determining whether one acting for another is a servant or an independent contractor.' " *Scott v. SSM Healthcare St. Louis,* 70 S.W.3d 560, 567 (Mo.App. E.D. 2002), quoting *Keller v. Missouri Baptist Hospital,* 800 S.W.2d 35, 38 (Mo.App. E.D. 1990).

We find that the foregoing evidence in the instant case does not establish *as a matter of law* that MPL was an independent contractor for the Project, or that Respondent did not exercise sufficient control over the manner in which the day to day work on the Project by MPL or its employees was done, and did not retain sufficient power to direct the manner of doing the work or the right to control MPL or its employees in the performance of the Contract to alleviate its liability for Appellant's injuries.

Based on the foregoing, Points I and II are granted.

### Conclusion

The record does not establish that MPL, as a matter of law, was an independent contractor over which Respondent did not exercise sufficient control to absolve Respondent of any liability for Appellant's injuries. Further, there are disputed issues of material fact in this case making summary judgment in Respondent's favor improper.

The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

ROBERT G. DOWD, JR., J., and PATRICIA L. COHEN, J., concur.

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant; and
(j) whether the principal is or is not in business.