# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3144

_____

Walter Huggins,                                    *
                                                   *
                Appellant,                          *
                                                   *   Appeal from the United States
        v.                                          *   District Court for the Eastern
                                                   *   District of Missouri.
FedEx Ground Package System, Inc.;                 *
Teton Transportation, Inc.; Swanston               *
Equipment Company,                                 *
                                                   *
                Appellees.                          *

_____

Submitted: November 10, 2009
Filed: January 19, 2010

_____

Before GRUENDER, ARNOLD, and BENTON, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Esteban Gutierrez was driving a tractor-trailer bearing the insignia of FedEx Ground Package System, while Walter Huggins slept in the back of the truck; Mr. Huggins was injured when Mr. Gutierrez collided with the tractor-trailer in front of him, which Tony Johnston, an employee of Teton Transportation, was driving. Shortly before the collision, as he topped a hill, Mr. Johnston saw a Swanston Equipment pickup truck traveling slowly down the left shoulder of the highway and displaying a sign that read, "Left Lane Closed Ahead." Mr. Johnston slowed his truck, and, when the vehicle immediately in front of him came to a sudden stop, he applied

his brakes and stopped about ten feet behind it. The Gutierrez tractor-trailer then collided with the back of the Teton vehicle. Mr. Huggins brought an action in Missouri state court for damages arising out of the collision and Teton removed it to federal district court.

The district court granted summary judgment to Teton and FedEx but denied summary judgment to Swanston. After obtaining an order designating the rulings in favor of Teton and FedEx as final judgments, *see* Fed. R. Civ. P. 54(b), Mr. Huggins appealed. We dismissed his appeal *sua sponte* for lack of appellate jurisdiction because of the unresolved claims against Swanston. *Huggins v. FedEx Ground Package Sys., Inc.*, 566 F.3d 771 (8th Cir. 2009). On remand, the district court granted Mr. Huggins's motion to dismiss his claims against Swanston without prejudice and Mr. Huggins again appealed, challenging the orders granting summary judgment to Teton and FedEx on his negligence claims. We conclude that we have jurisdiction and we affirm the judgment in favor of Teton. But we reverse the judgment in favor of FedEx and remand the case for further proceedings.

I.

In its motion for summary judgment, Teton contended that Mr. Huggins could not make out a negligence claim because he could not show that Teton's alleged negligence was a proximate cause of his injuries. *See Teichman v. Potashnick Constr., Inc.*, 446 S.W.2d 393, 398 (Mo. 1969). (The parties agree that Missouri substantive law applies in this case.) In support of its motion, Teton relied on the part of Mr. Johnston's deposition testimony that described a straightforward rear-end collision: he drove over the hill in the right westbound lane, saw the left-lane closure sign, eventually stopped in that lane, and was hit from behind. Mr. Huggins filed a timely response, relying on another part of Mr. Johnston's account to argue that the Teton driver contributed to the collision by engaging in a "cat-and-mouse game" with Mr. Gutierrez. Mr. Johnston had attested that the two trucks had traveled together for some time before the collision occurred. He had further declared that, during this

period, Mr. Gutierrez had tried to pass Mr. Johnston's tractor-trailer about five times and attempted to engage another driver to assist him, but Mr. Johnston did not allow him to pass and once slightly exceeded the speed limit to prevent Mr. Gutierrez from passing him. The district court concluded, however, that under Missouri law these earlier activities could not be a proximate cause of the rear-end collision, and Mr. Huggins does not challenge that determination on appeal.

Mr. Huggins maintains instead that the district court erred by denying his untimely motion to supplement his response to Teton's summary judgment motion. The court, after conferring with the parties, had previously extended its deadline for dispositive motions, including motions for summary judgment, and had ordered the opposing party to file any desired response to a dispositive motion within thirty days after such a motion was filed (thus providing ten more days for filing a response than did the local rules, *see* E.D. Mo. R. 7-4.01(B) (2006)). After Mr. Huggins filed his timely response to Teton's motion for summary judgment, FedEx filed its response to a summary judgment motion that Mr. Huggins later filed and it attached Mr. Gutierrez's affidavit. In the affidavit, Mr. Gutierrez attested that the Teton truck "cut in front of" him "[i]mmediately prior to the accident," thereby preventing him "from having sufficient stopping distance to avoid the collision." About a week after FedEx filed the affidavit and two weeks after the time ran for responding to Teton's motion, Mr. Huggins moved to supplement the record relevant to Teton's motion by incorporating Mr. Gutierrez's affidavit into his response. Teton, in turn, asked the court either to deny Mr. Huggins's request to supplement the record or to allow Teton additional time to depose Mr. Gutierrez pursuant to Fed. R. Civ. P. 56(f): Under that rule, a district court may grant time for a party opposing summary judgment to take a deposition if that party "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition."

Some three weeks later, Teton and the other defendants moved to continue the trial and to amend the court's case management order, asserting, among other things,

-3-

that the case had been delayed because of disputes about diversity jurisdiction, that Mr. Huggins had only recently completed his medical treatment, and that the parties were trying to "coordinate a date" for deposing Mr. Gutierrez. The court granted the motion in part, extending discovery and setting a later trial date, but it did not change the deadlines for dispositive motions or for responses to those motions. None of the parties deposed Mr. Gutierrez before the new discovery deadline passed. About a month later, the court denied Mr. Huggins's motion to supplement the record and granted Teton's summary judgment motion. *Huggins v. Federal Express Corp.*, No. 06-CV-01283, 2008 WL 1777438 (E.D. Mo. April 16, 2008). Though the court acknowledged the "potential significance of Gutierrez's testimony," it declined to consider the affidavit because Mr. Huggins obtained it after what was then the deadline for discovery, as well as the deadline for filing dispositive motions, had passed. The court explained that it "appear[ed] that Plaintiff opted against timely interviewing, deposing, and/or securing the affidavit of, Gutierrez," and that Mr. Huggins should "not be permitted to take unfair advantage of the presumably accessible, subject evidence – presented by FedEx after the close of discovery." In support of its conclusion that the evidence had been accessible, the court cited Rule 56(f), on which Mr. Huggins could have relied if the evidence had been unavailable to him. *Huggins*, 2008 WL 1777438 at *3 n.2.

Although Rule 56 provides deadlines for filing summary judgment materials, the district courts have broad discretion to manage their dockets and address particular circumstances by enforcing local rules and by setting enforceable time limits. *See Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 579 (8th Cir. 2006); *see also Sipe v. Workhorse Custom Chassis, LLC*, 572 F.3d 525, 531-32 (8th Cir. 2009). Here, Mr. Huggins does not dispute that he moved to supplement the summary judgment record two weeks after his response to Teton's summary judgment motion was due, and after he had already filed a timely response without indicating any need for additional time.

-4-

Under Fed. R. Civ. P. 6(b)(1), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect." The district court has discretion to admit or exclude materials under this rule, and its "refusal to accept untimely filed materials will not be reversed for an abuse of discretion unless the proponent of the materials has made an affirmative showing of excusable neglect." *African American Voting Rights Legal Def. Fund, Inc. v. Villa*, 54 F.3d 1345, 1350 (8th Cir. 1995) (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 894-98 (1990)), *cert. denied*, 516 U.S. 1113 (1996); *see also DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach*, 576 F.3d 820, 826 (8th Cir. 2009). We conclude that the district court did not abuse its discretion here because Mr. Huggins failed to make an "affirmative showing of excusable neglect."

Interpreting the term "excusable neglect" in a bankruptcy rule derived from Rule 6(b), the Supreme Court has held that "neglect" does not require a showing that the party was without fault but encompasses "inadvertence, mistake, or carelessness," though the neglect will not necessarily be "excusable." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 388, 391 (1993); *see Noah v. Bond Cold Storage*, 408 F.3d 1043, 1045 (8th Cir. 2005). But the untimeliness here was not the result of mistake or carelessness. As Mr. Huggins's counsel confirmed at oral argument, he consciously elected not to depose Mr. Gutierrez for strategic reasons: On hearing Mr. Johnston attest that Mr. Gutierrez, after repeatedly trying to pass him, had been angrily cursing at Mr. Johnston over his CB radio shortly before he slammed into the back of the Mr. Johnston's truck, Mr. Huggins's attorney decided not to preserve Mr. Gutierrez's testimony. Since Mr. Gutierrez had relocated to Hawaii, Mr. Huggins's counsel reasoned that FedEx might have difficulty producing him at trial to counter Mr. Johnston's negative characterization of Mr. Gutierrez's behavior. The district court thus did not clearly err in finding that Mr. Huggins consciously "opted against" timely obtaining Mr. Gutierrez's testimony.

We reject Mr. Huggins's contention that the district court's order granting additional time for discovery should alter the outcome. As we have explained, the court did not change the date for filing and responding to dispositive motions, it merely gave the parties additional time to conduct discovery before trial in a case that had been pending for over two years. We do not believe that the court's order distinguishes our case from *Villa* and others holding that a district court does not abuse its discretion by denying leave to file supplementary matter out of time where the proponent fails to show excusable neglect.

## II.
### A.

Mr. Huggins contends that the district court erred in entering summary judgment for FedEx based on its conclusion that the evidence could not support a finding that Mr. Gutierrez was a FedEx employee and so his negligence could not be imputed to FedEx. Reviewing the evidence and inferences from it favorably to Mr. Huggins, as we must, *Ridpath v. Pederson*, 407 F.3d 934, 935 (8th Cir. 2005), we conclude that Mr. Huggins presented sufficient evidence to avoid summary judgment.

Because Mr. Huggins based his negligence claim against FedEx on the doctrine of respondeat superior, he had to establish that the driver, Mr. Gutierrez, was a FedEx employee. Under Missouri law, the resolution of this issue depends upon the particular facts of each case and is usually a question for the jury, although it may be decided as a matter of law when the material facts are undisputed and "only one reasonable conclusion can be drawn" from those facts. *Johnson v. Bi-State Development Agency*, 793 S.W.2d 864, 867 (Mo. 1990), *superseded on other grounds*, *State ex rel. Metropolitan St. Louis Sewer Dist. v. Sanders*, 807 S.W.2d 87 (Mo. 1991); *Ascoli v. Hinck*, 256 S.W.3d 592, 594-95 (Mo. Ct. App. 2008).

The "principal factors" that Missouri courts routinely consider in determining whether one acting for another is an employee or an independent contractor for purposes of respondeat superior liability are set out in § 220(2) of the Restatement (Second) of Agency. *Lee v. Pulitzer Pub. Co.*, 81 S.W.3d 625, 631 (Mo. Ct. App. 2002); *see Johnson v. Pacific Intermountain Exp. Co.*, 662 S.W.2d 237, 242 n.9 (Mo. 1983); *Dean v. Young*, 396 S.W.2d 549, 553 (Mo.1965). The very first of these considerations is "the extent of control which, by the [relevant] agreement, the master may exercise over the details of the work," Restatement (Second) of Agency § 220(2)(a), and the Missouri Supreme Court has frequently emphasized the importance of the "right to control the conduct of another in the performance of an act," describing it as the "touchstone" for determining whether a master-servant relationship exists, *see e.g., J.M. v. Shell Oil Co.*, 922 S.W.2d 759, 764 (Mo. 1996).

In support of its summary judgment motion, FedEx relied on a "Linehaul Contractor Operating Agreement" under which Jon Ireland (who did business as ANI Logistics) agreed to provide certain shipping and tractor leasing services to FedEx. (Although RPS, Inc., originally contracted with ANI, FedEx later acquired RPS and the relevant contract, and thus we refer to FedEx as the contracting party.) The parties agree that Mr. Gutierrez drove an ANI tractor and was an ANI operator as that term is used in the agreement, and although Mr. Gutierrez was not a party to the agreement, some of the contract's provisions address the role of ANI's drivers.

Based on the agreement, the district court concluded that the parties intended to disclaim any employment relationship between ANI's employees and FedEx, that FedEx did not have the right to control Mr. Gutierrez's work, and that the contract supported the conclusion that Mr. Gutierrez was an independent contractor with respect to FedEx. After determining that Mr. Huggins had not offered admissible evidence to the contrary, the court granted summary judgment to FedEx because

Mr Huggins failed to adduce evidence sufficient to support a finding that Mr. Gutierrez was a FedEx employee.

In reaching its conclusion, the court relied heavily on specific provisions in the agreement stating that the parties "intend" that ANI "will provide [its] services strictly as an independent contractor, and not as an employee of [FedEx] for any purpose" and will "direct the operation of the Equipment and ... determine the methods, manner and means of performing the obligations specified in the Agreement." Although the district court acknowledged that the contract "defined certain requirements regarding standards of service/performance; operator appearance; customer service; safety/conduct," it concluded that ANI had discretion as to how to "carry out" these "objectives." The court relied on provisions giving ANI "sole discretion in determining the means and methods [by] which to carry out the foregoing objectives." The Restatement notes the "important distinction" that exists "between service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to ... use care and skill in accomplishing results." Restatement (Second) of Agency § 220, comment (e); *see also Skidmore v. Haggard*, 341 Mo. 837, 845, 110 S.W.2d 726, 730 (Mo. 1937). In the former case, the actor is an employee or servant, in the latter an independent contractor.

Of course, general contract provisions that confer on a party the discretion to determine the "means and methods" for carrying out "objectives" (language often used to describe the role of an independent contractor) will not trump provisions that actually reserve the right to control the details of that party's performance. Having carefully reviewed the agreement in this case, we conclude that it did not simply require ANI and its drivers to use skill and care in their work; under the agreement, FedEx retained the right to control at least some of the "means and methods" used by ANI and its drivers to achieve the contract's stated objectives.

We observe initially that the agreement makes plain that the ANI drivers performed work that was "part of the regular business" of FedEx, a fact that the Restatement lists as supporting the existence of a master/servant relationship. Restatement (Second) of Agency § 220(2)(h). For instance, the contract begins by stating that FedEx "is a duly licensed motor carrier engaged in providing ... transportation and delivery service" and that FedEx "wants to provide for package pick-up and delivery services through a network of nationwide terminals served by" what it terms "independent contractors." Unlike truck drivers engaged by other types of businesses, however, ANI and Mr. Gutierrez performed work that was the essence of FedEx's business, namely, "transportation and delivery service." *Cf. Brister v. Ikenberry*, No. ED 92993, 2009 WL 4927436, at *4 (Mo. Ct. App. Dec. 22, 2009).

We note, moreover, that the agreement required ANI and its drivers to look and act like FedEx employees while they performed FedEx services, and we believe that these provisions show the extent of FedEx's control over some details of Mr. Gutierrez's work, *see* Restatement (Second) of Agency,§ 220(2)(a). The agreement states that ANI will conduct its "business so that it can be identified as being part of the [FedEx] system" and that its operators will "[f]oster" FedEx's "professional image and good reputation." More specifically, "each person having contact with the public ... will wear a [FedEx]-approved uniform, maintained in good condition, and ... will otherwise keep his/her personal appearance consistent with reasonable standards of good order as maintained by competitors and promulgated from time to time" by FedEx. The agreement also required ANI's trucks to have FedEx insignia or "identify the Equipment as part of the [FedEx] system" and to be maintained "in a clean and presentable fashion free of body damage and extraneous markings."

In addition, in a section addressing customer service, the agreement states that FedEx will "familiarize" ANI "with various quality service and safety procedures

-9-

developed by [FedEx]," supporting an inference that ANI and its drivers were required to follow FedEx's procedures. FedEx also reserved the right to monitor ANI safety practices; FedEx terminal personnel, "at their option," were permitted to "take a ... safety ride with contractor [or presumably the contractor's driver] to verify" compliance with standards in the agreement. Furthermore, drivers had to submit daily fuel receipts and daily shipping documents to FedEx. They also organized and returned undeliverable packages to FedEx, and ANI agreed to provide FedEx with "advance notice of routes to be taken for each linehaul movement" and "a state by state mileage report" for interstate package and delivery movement.

The agreement also lists certain bases for "driver disqualification." The "acts and omissions" for which a driver will be disqualified include failure to pass or submit to a drug or alcohol test that FedEx may administer "at such time and place and in such manner as determined by [FedEx] or its designees," as well as failing to obtain a federally-required physical certification issued by a FedEx-approved medical examiner. If an alleged act or omission would constitute a criminal offense, FedEx, "in its sole discretion," "may make a preliminary determination of the probability that [ANI or a driver] is guilty of [an] offense whether charged or not."

Relying on workers' compensation cases, *see, e.g., Nunn v. C.C. Midwest*, 151 S.W.3d 388, 402 (Mo. Ct. App. 2004), Mr. Huggins contends that the labels used by the parties in an agreement such as "independent contractor," as opposed to "servant" or some similar appellation, are not dispositive on the question of the parties' actual relationship to each other. Although workers' compensation cases are not directly relevant because they are governed by statutes not applicable here and by presumptions that favor finding an employment relationship, *see id.* at 403, we agree that the parties' characterization of the relationship is not controlling. *See Brister*, 2009 WL 4927436, at *4. The applicable considerations set out in §220(2) of the Restatement (Second) of Agency are far broader in scope, and list as only one factor

-10-

out of many, "whether or not the parties believe they are creating the relationship of master and servant." Restatement (Second) of Agency § 220(2)(i).

The Restatement also lists as a relevant question "whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work." Restatement (Second) of Agency § 220(2)(e). Here ANI provided the tractor, but the contract provided that "any trailers and dollies used in connection with the [e]quipment will be provided by [FedEx] and at [FedEx's] expense." In addition, Mr. Huggins relies on his own sworn declaration for the statement in his brief that "FedEx provided the terminal and package processing facilities from which Gutierrez was required to obtain his itineraries, depart and return from trips, and to drop and hook the FedEx owned trailers." Although Mr. Huggins's declaration primarily addresses his own relationship with FedEx, he traveled with Mr. Gutierrez on the day of the accident and FedEx admits that the two were a driving "team." We do not think that the court should have disregarded Mr. Huggins's statement that he "saw Gutierrez obtain his itineraries from the FedEx ground dispatch office," *cf. Brannon v. Luco Mop Co.*, 521 F.3d 843, 848 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 725 (2008), and we believe that it provides some evidence that the "place of work" included FedEx's offices and that FedEx exercised some control over Mr. Gutierrez's driving, though Mr. Huggins failed to establish the exact contents of the itineraries. As we have said, moreover, the agreement expressed FedEx's intention to have ANI and other contractors provide pick-up and delivery services through a network of nationwide terminals, which may be some evidence that Mr. Gutierrez traveled from one FedEx terminal to another, so that the terminals were essentially part of his "place of employment."

We note too that the Restatement directs courts to consider the "length of time for which the person is employed" in determining whether a person is an independent contractor. Restatement (Second) of Agency § 220(2)(f). " '[I]f the time of

-11-

employment is short, the worker is less apt to subject himself to control as to details and the job is more likely to be considered his job than the job of the one employing him.' Likewise, a longer term of employment denotes an employer-employee relationship as being more likely." *Jones v. Brashears*, 107 S.W.3d 441, 446 (Mo. Ct. App. 2003) (quoting Restatement (Second) of Agency, § 220, comment j). Mr. Huggins relies on a "Separation Form" that indicates that Mr. Gutierrez was employed from April, 2001, and voluntarily resigned in May, 2004, but the form does not list an employer. It lists his "Supervisor" as "Alysha Singleton," who was never associated with FedEx in the record and may well have been an ANI employee. But FedEx admits that Mr. Gutierrez was employed by Mr. Ireland during this time, and the evidence may support an inference that Mr. Gutierrez drove FedEx trucks for three years.

We observe, finally, that in addition to the documents that we have already discussed, Mr. Huggins attached several other items to his response to the summary judgment motion that provide some support for a finding that FedEx employed Mr. Gutierrez. For instance, Mr. Huggins filed a document with the "FedEx Ground" logo at the top that reflects a "Record of Strength Test" for Mr. Gutierrez. The form is dated shortly before he was hired. Mr. Huggins also proffered an undated "Fair Credit Reporting Act Disclosure Statement," which authorizes credit agencies and others to release information about Mr. Gutierrez to "FedEx Ground" and their agents and appears to be signed by Mr. Gutierrez. Mr. Huggins submitted a drug testing form, moreover, that listed FedEx as his employer. We believe that these forms support an inference that FedEx participated in deciding whether Mr. Gutierrez would be hired to drive a truck to pull its trailers and provide some support for a finding that he was a FedEx employee.

As we have said, the court may decide the question of whether a master-servant relationship exists as a matter of law only if "no material fact[] giving rise to the

determination is genuinely in dispute and when only one conclusion is reasonable." *Ascoli*, 256 S.W.3d at 595. There is certainly record evidence tending to show that Mr. Gutierrez was an independent contractor. For instance, as the district court pointed out, the contract between FedEx and ANI provided that ANI would compensate the drivers, pay their taxes, and provide workers' compensation for them. But we believe that the evidence – including the terms of the written agreement, Mr. Huggins's declaration, and the documents showing that FedEx tested Mr. Gutierrez and checked into his background before he was hired – would support a reasonable inference and thus a jury finding that FedEx had a right to control his performance and was his employer for respondeat superior purposes. *See Shell Oil Co.*, 922 S.W.2d at 764. We therefore conclude that the district court erred in holding that Mr. Huggins could not make out a claim against FedEx based on respondeat superior.

B.

We reject what Mr. Huggins calls his alternative argument, namely, that FedEx is vicariously liable for Mr. Gutierrez's negligence under the Federal Motor Carrier Safety Regulations (FMCSR), *see* 49 C.F.R. § 376.12(c)(1). Mr. Huggins cites the FMCSR and related case law in support of his contention that FedEx is liable as a matter of law for Mr. Gutierrez's negligent operation of the leased vehicle. In response, FedEx states that Mr. Huggins failed to include this claim in his complaint. FedEx also argues that Mr. Huggins could not prevail in any event, because he is a co-driver, not a member of the public, and thus is not an intended beneficiary of the FMCSR and its enabling statute, 49 U.S.C. § 14102, and because the governing agency (now the Department of Transportation) has clarified by regulation and commentary that prior cases holding carriers liable under the FMCSR were wrongly decided. Because we conclude that Mr. Huggins did not plead a claim under the FMCSR, we do not reach FedEx's other arguments.

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although we must liberally construe a complaint in favor of the plaintiff, a complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (internal quotation marks and citation omitted).

To assess whether Mr. Huggins made out a claim under the FMCSR, we must therefore determine the "grounds upon which" his claim rests. Section 376.12(c)(1) requires a lease between a federally authorized carrier and an owner-operator to state that the carrier has "exclusive possession, control, and use of the [lessor's] equipment" and "shall assume complete responsibility for the operation of the equipment" during the term of the lease. 49 C.F.R. § 376.12(c)(1); *see also* 49 U.S.C. § 14102(a)(4). Here the FedEx lease includes a provision to that effect. Relying, in part, on the same regulatory language, courts have held carriers liable for injuries to the public caused by the negligent operation of leased vehicles; these courts have sometimes imposed so-called logo liability by holding that a carrier was liable whenever its logo or other identification appeared on the leased truck at the time of the accident, *see, e.g., Mellon Nat'l Bank & Trust Co. v. Sophie Lines, Inc.*, 289 F.2d 473, 475-78 (3d Cir. 1961). Though we have not addressed the issue in an accident case, in two cases involving insurance disputes we cited *Mellon* and stated that carriers are liable for injuries to the public resulting from the negligent operation of leased vehicles that identify the carriers by federal permit number or logo. *See Grinnell Mut. Reinsurance Co. v. Empire Ins. Co.*, 722 F.2d 1400, 1404 (8th Cir. 1983), *cert. denied*, 466 U.S. 951 (1984); *Wellman v. Liberty Mutual Insurance Company*, 496 F.2d 131, 136 (8th Cir.1974); *see also Acceptance Ins. Co. v. Canter*, 927 F.2d 1026, 1027 (8th Cir. 1991).

-14-

In his complaint, Mr. Huggins did not mention any federal or state law governing authorized motor carriers, nor did he even allege that FedEx was a carrier. Over two years after he filed his complaint, and almost eight months after the deadline passed for seeking leave to amend pleadings, Mr. Huggins maintained for the first time in response to FedEx's summary judgment motion that FedEx was liable based on the FMCSR. Perhaps because this argument had not been previously advanced, the district court did not address the matter in its order granting summary judgment to FedEx.

Mr. Huggins contends on appeal, however, that he was not required to plead the FMCSR specifically to be entitled to relief under it. He contends that by alleging in his complaint that FedEx was "vicariously liable" for Mr. Gutierrez's negligence because Mr. Gutierrez was an "employee/agent/servant" of FedEx and "acting in the course and scope of his agency/employment" at the time of the accident (allegations supporting his common-law negligence claim), he sufficiently preserved the argument that FedEx was "vicariously liable" for Mr. Gutierrez's liability because of the federal regulations. We reject the contention because unlike Mr. Huggins's claim based on respondeat superior, liability under § 376.12(c)(1) (the so-called "control regulation") is not bottomed on any alleged "employee/agent/servant" relationship between a carrier and the vehicle's driver.

In 1992, the Interstate Commerce Commission (the predecessor governing agency) made it plain that § 376.12(c)(1) had no effect on the legal relationship between a carrier and the driver of its leased vehicle:

> Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a

carrier lessee complies with 49 U.S.C. § 14102 and attendant administrative requirements.

49 C.F.R. § 376.12(c)(4). In related comments, the ICC explained that although "most courts" had "correctly interpreted the appropriate scope of the control regulation," the agency had added this subsection "to clear up confusion in some courts and state agencies." The ICC further noted that the regulations had always been "silent on the agency status of lessors," and that the agency's decisions were "clear that the [ICC] has taken no position on the issue of independence of lessors." Thus we conclude that Mr. Huggins's allegations that FedEx was liable for Mr. Gutierrez's negligence because Mr. Gutierrez was an employee, servant, or agent of FedEx are precisely what they appear to be and no more: allegations that support a common-law theory of respondeat superior. Mr. Huggins himself acknowledged this distinction in a post-judgment motion by describing his contention that FedEx was liable under the FMCSR as an "alternative basis of liability" that he had asserted "in addition to his agency theory."

We note, moreover, that to state a claim under the FMCSR Mr. Huggins was required to do more than merely refer in an obscure way to some aspect of it (such as vicarious liability) in his complaint. Although a party is "not necessarily required to identify a specific statute in its complaint," we concluded in *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806-07 (8th Cir. 2008), that a party's reference to ERISA in the jurisdictional section of her third-party complaint, absent any other indication that she intended to pursue an ERISA claim, did not give the opposing party fair notice of such a claim. Here, Mr. Huggins's complaint not only fails to mention the FMCSR or its enabling statute, it does not even allege that FedEx is a carrier, a vital aspect of the duty he now seeks to impose on FedEx.

We conclude that Mr. Huggins's complaint did not state a claim under the FMCSR because it did not give FedEx fair notice that he was making such a claim. We therefore need not address the claim's merits.

## III.

We affirm the judgment entered in favor of Teton, and we reverse the judgment in favor of FedEx and remand the case for further proceedings not inconsistent with this opinion.

_____