# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-3232

_____

Reginald Gray; Jammie Hill; Marcus Holmes

*Plaintiffs - Appellees*

Roy Patton, Jr.; Tom Skundrich, Jr.

*Plaintiffs*

James Tichenor; Carl Tucker

*Plaintiffs - Appellees*

Rick Hendricks

*Plaintiff*

Bobby Brown; Michael Jost; Rich Mitchell

*Plaintiffs - Appellees*

Mike Sheffer

*Plaintiff*

John Waweru

*Plaintiff - Appellee*

Kevin Pour; Jamie Tenison; Seid Huskic; Bob Candella; Michael Light; Mike Sanders; Bob Arbutti; Ken Stibor; Gary Austin; Don Blackmon; Robert Hansen; Bob O'Keefe; Luther McLain; Bob Lee Baker; Dave King

*Plaintiffs*

v.

FedEx Ground Package System, Inc.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 9, 2015
Filed: August 21, 2015

_____

Before GRUENDER, MELLOY, and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Across the country, FedEx drivers have sued to prove that they are employees, not independent contractors as FedEx claims, and thereby secure benefits such as overtime pay and greater labor rights. *See In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*, 758 F. Supp. 2d 638, 654 (N.D. Ind. 2010). As one court has explained, FedEx "carefully structured its drivers' operating agreements so that it could label the drivers as independent contractors . . . to avoid the additional costs associated with employees. In other words," the question is close "by design."

*Craig v. FedEx Ground Package Sys., Inc.*, 335 P.3d 66, 72-73 (Kan. 2014) (per curiam).[1]

But here we need not answer that question. Here the district court granted partial summary judgment to plaintiffs, finding no genuine dispute that they were FedEx employees, even though under Missouri law employment status is an issue of fact. The question for us is thus only whether a reasonable jury could disagree and conclude that plaintiffs were independent contractors. We hold that it could, and we therefore reverse and remand.

I.

FedEx Ground Package System, Inc., contracts with operators to take packages from its terminals and then, in the familiar white trucks and vans, deliver those

---

[1]Some courts, in various legal and procedural postures, have found employee status. *See Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033 (9th Cir. 2014); *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981 (9th Cir. 2014); *Schwann v. FedEx Ground Package Sys., Inc.*, No. 11-11094, 2013 WL 3353776 (D. Mass. July 3, 2013), *withdrawn in relevant part*, 2015 WL 501512 (D. Mass. Feb. 5, 2015); *Craig*, 335 P.3d 66; *Estrada v. FedEx Ground Package Sys., Inc.*, 64 Cal. Rptr. 3d 327 (Cal. Ct. App. 2007). Other courts, again in various postures, have found independent-contractor status. *See FedEx Home Delivery v. NLRB*, 563 F.3d 492 (D.C. Cir. 2009); *Johnson v. FedEx Home Delivery*, No. 04-CV-4935, 2011 WL 6153425 (E.D.N.Y. Dec. 12, 2011). Another certified the question. *See Craig v. FedEx Ground Package Sys., Inc.*, 686 F.3d 423 (7th Cir. 2012) (per curiam). Still others have concluded simply that summary judgment was inappropriate. *Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313 (11th Cir. 2015); *Mailhot v. FedEx Ground Package Sys., Inc.*, No. 02-00257, 2003 WL 22037314 (D.N.H. Aug. 29, 2003). And a multidistrict-litigation proceeding has come to mixed results under the relevant laws of dozens of states. *In re FedEx*, 758 F. Supp. 2d at 734. The multidistrict-litigation court has been partially reversed in some of the cases cited above.

packages to homes and businesses. FedEx divides the country into thousands of territories, each assigned to an operator who makes deliveries there. Plaintiffs in this appeal are all former operators who allege that they should have been treated as employees. They claim that FedEx defrauded them as to their employment status, thereby denying them benefits such as overtime pay and workers' compensation.

Plaintiffs entered into substantively identical operating contracts with FedEx, contracts that had several important features. Operators were not required to drive personally. Rather, they could hire others, subject to FedEx's qualifications, to drive for them. The operators also received a proprietary interest in servicing their territories, an interest that they could sell to others, again subject to FedEx's approval. FedEx could not fire the operators at will during their contract terms of one, two, or three years, but it could fire them for cause, and it could choose not to renew their contracts for any reason. Operators provided their own vehicles. FedEx paid them based on (among other things) the numbers of packages and stops serviced. And FedEx managers could supervise an operator by riding along on delivery runs four times a year. Ultimately, at least according to the contracts, operators controlled "the manner and means" used to make their deliveries. According to the contracts, an operator made deliveries "strictly as an independent contractor, and not as an employee of FedEx."

Notwithstanding that label, plaintiffs produce a host of allegations that they say shows that they were employees. FedEx required that operators' vehicles meet certain specifications; that the vehicles bear FedEx's logo; and that the vehicles be painted not just white, but "FedEx White." Operators could not make personal use of their vehicles without covering up the FedEx logo. They had to provide proof of inspection and maintenance. Drivers had to wear a FedEx uniform, and FedEx even required that their personal appearances be up to "reasonable standards of good order." Drivers were subject to background, credit, and drug checks. They had to use

FedEx package scanners. And, plaintiffs say, FedEx really did control how drivers delivered packages, down to hours worked.

For the most part, plaintiffs' stories are similar. Bobby Brown operated with FedEx Ground from its inception in 2000 until 2006, working one territory until 2003 and another from 2003 until 2006. At one point, Brown had another driver covering his first territory for him. He eventually bought an interest in a new territory from another operator. In 2006, he sold his interest in the second territory.

Reginald Gray bought his territory and a van from another operator in 2002. He formed a limited liability company and paid another plaintiff, Marcus Holmes, to drive a second van. Later he had another plaintiff, Jammie Hill, drive. He used other drivers as needed. Gray sold his territory to another operator in 2006.

Michael Jost operated with FedEx Ground from its inception until 2003. He claims that FedEx forced him to sell his territory, which he did, for about $25,000.

Richard Mitchell operated from 2002 until 2004. He serviced his territory through a company he created. In the last few months of his tenure, he paid a replacement driver. He sold his territory for $2,500.

James Tichenor operated from 2004 to 2006. He serviced his territory through a limited liability company. He sold his territory for $23,500.

Carl Tucker operated from 2003 to 2006. Like Reginald Gray, he paid Jammie Hill to drive for him. He sometimes paid other drivers as well. He sold his territory.

John Waweru operated from 2001 to 2003. He paid plaintiff Marcus Holmes to drive for him for three or four months. Waweru sold his territory as well.

Marcus Holmes, as already mentioned, began his relationship with FedEx by driving for other plaintiffs. He then became an operator himself in 2003 when he took over another operator's territory. Holmes sometimes paid temporary drivers to drive for him. He sold his territory and a vehicle for about $40,000.

Finally, Jammie Hill also began his relationship with FedEx by driving for other plaintiffs. He became an operator in 2004. He sometimes used temporary drivers, one of which he hired to work Fridays and Saturdays. Whether Hill sold his route is unclear from his deposition testimony.

In 2006, this suit was brought in the United States District Court for the Eastern District of Missouri. The suit was then transferred to a multi-district litigation proceeding in the United States District Court for the Northern District of Indiana. That court considered whether operators were independent contractors or employees under the relevant law of dozens of states. *In re FedEx*, 758 F. Supp. 2d at 661-733. Results were mixed. *Id.* at 734. Considering Missouri law, however, the court denied class certification in favor of a "driver-by-driver, terminal-by-terminal, supervisor-by-supervisor analysis . . . ." *In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*, 273 F.R.D. 424, 475 (N.D. Ind. 2008). The court remanded the case to the Eastern District of Missouri for this analysis.

For our purposes, the case proceeded in Missouri as follows. FedEx and plaintiffs cross-moved for summary judgment on employment status, and the court granted partial summary judgment to the plaintiffs, ruling that they were employees as a matter of Missouri law. The nine plaintiffs here then won at trial. A jury, instructed that the plaintiffs were employees, found that FedEx had defrauded them, denying them each tens of thousands of dollars in benefits by treating them as independent contractors. FedEx now appeals the grant of partial summary judgment on employment status as well as an evidentiary ruling from the trial. It does not

-6-

attempt to appeal the partial denial of its own motion for summary judgment or otherwise argue that plaintiffs were independent contractors as a matter of law.

## II.

We review grants of summary judgment *de novo*, viewing the facts in the light most favorable to the nonmoving party. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Where the record taken as a whole could lead a rational trier of fact to find for the nonmoving party, there is a genuine issue for trial. *See id.*

Because Missouri law governs this diversity suit, "we are bound by the decisions of the Supreme Court of Missouri." *United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, 751 F.3d 880, 883 (8th Cir. 2014) (quoting *Dannix Painting, LLC v. Sherwin–Williams Co.*, 732 F.3d 902, 905 (8th Cir. 2013)). If that court "has not addressed an issue" of state law, we predict how it "would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law." *Id.* (quoting *Dannix*, 732 F.3d at 905).

In Missouri, in contrast to the law of some other states, employment status is a question of fact. *Compare Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 857 (8th Cir. 2010), *with, e.g.*, *Fesler v. Whelen Eng'g Co.*, 688 F.3d 439, 442 (8th Cir. 2012) (applying Iowa law). In other words, a court applying Missouri law may decide the employment statuses of FedEx operators on summary judgment only "when the material facts are undisputed *and* 'only one

reasonable conclusion can be drawn' from those facts." *Huggins*, 592 F.3d at 857 (emphasis added) (quoting *Johnson v. Bi–State Dev. Agency*, 793 S.W.2d 864, 867 (Mo. 1990)); *see Benham v. McCoy*, 213 S.W.2d 914, 919 (Mo. 1948).

The parties agree that an eight-factor test governs the determination of plaintiffs' employment statuses.[2]  Under the parties' formulation, we consider

> (1) the extent of control [granted by the contracts], (2) the actual exercise of control, (3) the duration of the employment, (4) the right to discharge, (5) the method of payment, (6) the degree to which the alleged employer furnished equipment, (7) the extent to which the work is the regular business of the employer, and (8) the [label used in the] employment contract[s].

*Nunn v. C.C. Midwest*, 151 S.W.3d 388, 400-02 (Mo. Ct. App. 2004) (quoting *Phillips v. Par Elec. Contractors*, 92 S.W.3d 278, 282 (Mo. Ct. App. 2002), *overruled on other grounds*, *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223-224 (Mo. 2003)), *superseded on other grounds by statute*, Mo. Rev. Stat. § 287.043.  "Many factors are included in the calculus for determining if one person is the servant of another . . . .  However, the touchstone is whether the party sought to be held liable . . . control[s] or [has the] right to control the conduct of another . . . ." *J.M. v. Shell Oil Co.*, 922 S.W.2d 759, 764 (Mo. 1996).

---

[2]At one point during the multidistrict-litigation proceeding, plaintiffs argued that the proper test is a similar, ten-factor test from the Restatement (Second) of Agency § 220(2) (Am. Law Inst. 1958). *In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*, 273 F.R.D. 516, 531 (N.D. Ind. 2010); *see Huggins*, 592 F.3d at 858; *Dean v. Young*, 396 S.W.2d 549, 553 (Mo. 1965) ("We have accepted the criteria set out in the Restatement of Agency for determining whether or not a questioned relationship is that of master and servant or employer and independent contractor.").  We accept the parties' current agreement that the eight-factor test above governs our analysis.

1.      *The Extent of Control*

Here the extent of control under the contracts does not, as a matter of law, weigh in favor of employee status.  It is true that, under the contracts, FedEx could control many aspects of operators' work, including even the shade of paint on the vehicles and the appearances of drivers.[3]  Yet we cannot say that every reasonable jury would find that this factor favors employee status.

First, much of plaintiffs' argument applies only to drivers, not necessarily to operators.  Nothing in the contracts required operators to drive personally.  So the idea that FedEx could control days and hours of work and even "the types of shoes and color socks" that operators could wear is simply wrong.  Under the contracts, operators had to make their drivers meet certain standards.  They did not have to meet the standards themselves unless they were driving.

Second, and more important, the contracts gave not just restrictions but privileges as well.  Operators did not need to deliver packages themselves; they could, subject to FedEx's qualifications, hire others to do it for them.  Employees usually do not hire other people to do their jobs.  *See Skidmore v. Haggard*, 110 S.W.2d 726, 727-28, 731, 733 (Mo. 1937) (upholding a verdict that a newspaper-route operator was an independent contractor where, among other things, he "had the right to accomplish [delivery] by substituting . . . other drivers and did do so").  Nor are employees usually able to buy and sell their jobs.  *See id.* at 731 (explaining that the sale of a newspaper route was "surely . . . inconsistent with the relation of master and servant").  Yet the contracts here granted operators a proprietary interest in their territories, an interest that, subject to FedEx's approval, they could sell.  Moreover,

---

[3]Legally mandated aspects of FedEx's control, such as background checks, do not necessarily weigh against independent-contractor status.  *See K & D Auto Body, Inc. v. Div. of Emp't Sec.*, 171 S.W.3d 100, 106 (Mo. Ct. App. 2005).

the contracts themselves specifically prohibited FedEx from controlling "the manner or means" operators used to make their deliveries.

Finally, some aspects of the contracts could suggest that plaintiffs were either employees or independent contractors, depending on one's point of view. Consider FedEx's ability to supervise its operators by sending managers to ride in the operators' vehicles up to four times a year. Plaintiffs see this as evidence of FedEx's control. Yet employees are often subject to supervision daily—whenever managers decide to supervise them—not just four times a year. A reasonable jury could as easily say that being subject to supervision only four times a year is evidence of independence.

We need not decide whether this factor (or any factor) suggests that plaintiffs were independent contractors as a matter of law. Rather, we simply conclude that a reasonable jury could decide that this factor weighs for independent-contractor rather than employee status.

2.    *Actual Control*

For similar reasons, we conclude that the actual extent of FedEx's control also suggests at least a genuine dispute. Again, there remains evidence that FedEx controlled the order and timing of deliveries and demanded compliance with a host of details. But there is also evidence that FedEx exercised different levels of control over each plaintiff. Considered individually, plaintiffs do not show, as a matter of law, that FedEx actually controlled them. Several plaintiffs serviced their territories through companies they had formed. Six paid others to drive for them. And all nine, except perhaps Jammie Hill, sold their territories, some for thousands or tens of thousands of dollars. On this record, a reasonable jury could conclude that FedEx's lack of actual control over plaintiffs suggests that they were independent contractors. *See generally Skidmore*, 110 S.W.2d 726.

*3.    Employment Duration*

"Independent contractors are typically hired to complete a specific task . . . ." *Howard v. City of Kansas City*, 332 S.W.3d 772, 781 (Mo. 2011).  Here plaintiffs contracted for terms of one, two, or three years.  Even the plaintiff who operated for the shortest time period, Robert Mitchell, operated for a year and nine months.  The Missouri Court of Appeals has concluded that a relationship of about a year and a half supports a finding of employment.  *Nunn*, 151 S.W.3d at 401-02.  Though there are independent contractors who have worked for longer, a year and nine months, or more, spent on the ongoing task of delivering packages suggests that plaintiffs were employees.

*4.    Right to Discharge*

"The ability to discharge a worker at-will suggests that the worker is an employee . . . ."  *Kirksville Publ'g Co. v. Div. of Emp't Sec.*, 950 S.W.2d 891, 899 (Mo. Ct. App. 1997) (considering the Internal Revenue Service's twenty-factor test for employment status).  Inversely, an inability to discharge a worker at will suggests that the worker is an independent contractor.  *See id.*  While its operating agreements were in effect, FedEx could terminate its relationships with plaintiffs essentially only for cause.  And the Missouri Court of Appeals has found that a less restrictive requirement, a provision requiring only thirty days' notice before an otherwise at-will dismissal, supported independent-contractor status.  *See id.*  On its face, then, FedEx's for-cause restriction suggests plaintiffs were independent contractors.

Nonetheless, the district court focused on FedEx's ability to let plaintiffs' contracts lapse for any reason.  But plaintiffs were only rarely subject to the risk of being non-renewed without cause—once a year at most.  We cannot say, as a matter of law, that this meant FedEx could effectively fire plaintiffs at will.  Accordingly, a reasonable jury could find that this factor favors independent-contractor status.

5.    *Method of Payment*

In the abstract, the methods of paying employees and independent contractors are distinct. "Independent contractors . . . are paid a fixed sum on a by-the-job basis," and employees are paid a salary, usually hourly or annual. *Howard*, 332 S.W.3d at 781-82. Here, however, there was a hybrid method under which FedEx paid plaintiffs based on stops made, packages handled, and other factors. In similar circumstances, the Missouri Court of Appeals has concluded that the method-of-payment factor "definitely falls in favor of finding an independent contractor relationship," where, among other things, a trucker was paid "based on the mileage and weight of his hauls." *Nunn*, 151 S.W.3d at 391, 401. Given the hybrid payment scheme here and the view of the Missouri Court of Appeals, a reasonable jury could find that this factor favors independent-contractor status.

6.    *Furnishing Equipment*

Workers who provide their own equipment are more likely to be independent contractors; workers for whom equipment is provided are more likely to be employees. *Skidmore*, 110 S.W.2d at 730; *see Nunn*, 151 S.W.3d at 401-02. Here, plaintiffs, not FedEx, provided their own vehicles and dollies. *See Nunn*, 151 S.W.3d at 391, 401-02 (finding that this factor favored independent-contractor status where a trucker provided the majority of his equipment, including his truck). Yet FedEx also required uniforms and scanners, items that it offered for sale to plaintiffs. And, of course, FedEx provided the entire underlying distribution network. Because plaintiffs did provide a key instrumentality, the vehicles, a reasonable jury could find that this factor weighs for independent-contractor status.

7.     *The Extent to Which the Work Is the Regular Business of the Employer*

FedEx's business is delivering packages, and there would be no business without operators like plaintiffs. This factor undisputedly favors employee status. *See Burgess v. NaCom Cable Co.*, 923 S.W.2d 450, 454 (Mo. Ct. App. 1996) (finding employment where, among other things, employer "would have no *business purpose* if the work of the [employees] did not occur").

8.     *The Label Used in the Employment Contracts*

The contracts label the plaintiffs as independent contractors. This factor undisputedly favors independent-contractor status. *See Nunn*, 151 S.W.3d at 402 (considering a contractual designation that a worker was an independent contractor).

In sum, then, only two factors, (3) employment duration and (7) FedEx being a delivery business, support a finding that plaintiffs were employees as a matter of law. The remaining six factors suggest a genuine dispute. These include the two most important factors, (2) actual control and (1) the right to control. *See Shell Oil Co.*, 922 S.W.2d at 764. At least one factor, (8) the contract label, undisputedly suggests that plaintiffs were independent contractors. On this record, the district court should not have found that plaintiffs were employees as a matter of law.

This conclusion is consistent with *Huggins*, a decision in which we considered the employment status of a different kind of FedEx Ground operator. 592 F.3d at 857-61. The district court there had ruled that the operator was an independent contractor as a matter of law. *Id.* at 857. We reversed, holding that "the evidence—including the terms of the written agreement, [plaintiff's] declaration, and the documents showing that FedEx tested [the operator] and checked into his background before he was hired—would support a reasonable inference and thus a jury finding that FedEx . . . was his employer." *Id.* at 861. But we also explained that

-13-

there was "certainly record evidence tending to show that [the operator] was an independent contractor." *Id.* Ultimately, all we held was that summary judgment was improper where the evidence was mixed. *Id.* We similarly hold that summary judgment was improper here.

Finally, we reject plaintiffs' comparisons to their favored cases—cases in different procedural or legal postures. We are not, for example, reviewing whether substantial evidence supports a trial court's determination after a bench trial. *See, e.g.*, *Estrada*, 64 Cal. Rptr. 3d at 331, 336. However, this appeal is similar to a recent one from the Eleventh Circuit. *See Carlson*, 787 F.3d 1313. Relying on factors similar to the eight here, our sister circuit reviewed a grant of summary judgment to FedEx under Florida law, which also treats employment status as a question of fact. *Id.* at 1317-19; *see Nunn*, 151 S.W.3d at 400. The Eleventh Circuit concluded that "there are facts that support FedEx's position and there are facts that support the Florida drivers' position. Given the summary judgment posture of the case, we do not think it is appropriate for us to figure out what weight to give these conflicting facts . . . ." *Carlson*, 787 F.3d at 1326. Similarly, we think the district court here erred in granting summary judgment to plaintiffs.

## III.

Again, we do not hold that plaintiffs were independent contractors. That issue is not before us. We merely hold that on this record, where plaintiffs could hire others to do their jobs and where they sold their jobs to others, there remains a genuine dispute as to whether plaintiffs were employees or independent contractors. That issue should have been submitted to the jury. We thus do not reach FedEx's

evidentiary argument regarding the trial. We reverse the grant of summary judgment and remand for further proceedings.[4]

_____

---

[4]On appeal, plaintiffs moved to strike portions of FedEx's brief and appendix. Because we have not relied on this material, we deny plaintiffs' motion as moot. *See Stewart v. Prof'l Comput. Ctrs., Inc.*, 148 F.3d 937, 940 n.3 (8th Cir. 1998).