# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1520
No. 99-1610

_____

|  |  |  |
|---|---|---|
| Sandra Jarrett, | * | |
| | * | |
| Plaintiff - Appellee/ | * | |
| Cross Appellant, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| ERC Properties, Inc., | * | |
| | * | |
| Defendant - Appellant/ | * | |
| Cross Appellee. | * | |

_____

Submitted:  December 17, 1999

Filed:  May 2, 2000

_____

Before RICHARD S. ARNOLD and LOKEN, Circuit Judges, and WEBB,[*] District
Judge.

_____

LOKEN, Circuit Judge.

Former employee Sandra Jarrett sued ERC Properties, Inc., for failure to pay
overtime mandated by the Fair Labor Standards Act (FLSA), and for wrongful

_____

[*]The HONORABLE RODNEY S. WEBB, Chief Judge of the United States
District Court for the District of North Dakota, sitting by designation.

discharge under Arkansas law. ERC now appeals a jury verdict in Jarrett's favor, and Jarrett cross-appeals for liquidated damages and additional attorneys' fees. We reverse the decision to deny her liquidated damages and otherwise affirm.

We review the trial evidence in the light most favorable to the jury's verdict. ERC owns and manages federally subsidized housing projects in various Arkansas communities. ERC hired Jarrett in May 1995 as resident site manager of the Yorkville apartment complex; she also conducted ERC's "Lend-A-Hand" educational program at another complex. In November 1995, Jarrett was promoted to site manager of four complexes in three different municipalities. She moved to the Booneville complex, where she lived next door to her new regional supervisor, Patsy Wilson. Jarrett's first supervisor, Tammy Hester, and later Patsy Wilson told Jarrett that ERC did not pay its site managers overtime. Jarrett was instructed to include only her "office time" -- forty hours per week -- on her time sheets. On average, Jarrett worked considerably more than forty hours per week.

In March 1996, Jarrett complained to Robert Fikes, ERC's Vice-President of Asset Management, that Patsy Wilson's daughter had submitted a falsely back-dated application to rent an apartment at the Booneville complex, and that a properly dated application had disappeared from ERC's private office, to which Wilson and her husband had access. At the time, the federally subsidized Booneville complex had a waiting list, and falsifying a tenant's application date violated federal regulations. Fikes told Jarrett she would have to prove her allegations "beyond a shadow of a doubt" and fired her when she was unable to do so.

Jarrett filed this action in February 1998, asserting claims for willful violation of the FLSA's overtime requirements and wrongful discharge. The jury awarded her $11,970.08 on the FLSA claim and $33,715.04 on the wrongful discharge claim. The district court denied Jarrett liquidated damages under the FLSA and reduced her request for attorneys' fees from $36,360 to $21,816. Both sides appeal.

-2-

## I.  FLSA Issues.

A.  Was Jarrett an Exempt Employee under the FLSA?  The FLSA requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours.  See 29 U.S.C. § 207(a).  The statute exempts certain employees from its overtime protections, including "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).  The Secretary of Labor has promulgated extensive regulations defining the types of employees who fall within these exemption categories.  See 29 C.F.R. pt. 541; Fife v. Harmon, 171 F.3d 1173, 1175-76 (8th Cir. 1999).  For employees who earn more than $250 per week, the "administrative employee" exemption applies if the employee's

> primary duty consists of the performance of [office or non-manual work directly related to management policies or general business operations of her employer or her employer's customers], which includes work requiring the exercise of discretion and independent judgment.

29 C.F.R. § 541.2(e)(2), incorporating by reference § 541.2(a)(1).[1]  ERC argues that Jarrett was an exempt administrative employee as a matter of law.  We disagree.

Disputes regarding the nature of an employee's duties are questions of fact, but the ultimate question whether an employee is exempt under the FLSA is an issue of law.  See Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986).  In this case, the district court submitted the entire issue to the jury with instructions that correctly

---

[1]This "short test" applies only to more highly compensated employees.  While employed at the Yorkville complex, Jarrett earned less than $250 per week.  Because the evidence supports the jury's finding that Jarrett was a non-exempt employee under the short test, we need not consider the more rigorous "long test" in 29 C.F.R. § 541.2.

summarized the definition of an exempt administrative employee set forth in the regulations. The jury found that Jarrett was a non-exempt employee, and the district court adopted that finding. Because ERC did not object to the court's instructions, we must affirm on this issue if the evidence, viewed most favorably to the jury's verdict, is sufficient to support that verdict.

Jarrett testified at trial that her duties at ERC included collecting applications from prospective tenants; verifying references and other application information; contacting potential applicants regarding apartment availability; preparing "reports," which she described as filling in blanks on printed forms; writing receipts and verifying rent payments; performing minor repairs and getting help for repairs she could not do; picking up trash; maintaining the grounds; cleaning the laundry room, bathrooms, and community room; locking and unlocking common rooms according to a schedule determined by her supervisor; and forwarding invoices to ERC for payment. These tasks resemble the work of non-exempt "bookkeepers, secretaries, and clerks of various kinds [who] hold the run-of-the-mine positions in any ordinary business." 29 C.F.R. § 541.205(c)(1). Most involved "routine clerical duties," 29 C.F.R. § 541.205(c)(2), and the rest were manual labor. Jarrett also testified that her work did not "requir[e] the exercise of discretion and independent judgment," and ERC introduced little or no evidence to the contrary. Though ERC argues its site managers primarily perform administrative duties, the jury's finding that Jarrett was a non-exempt employee is well-supported by this record.

ERC further argues that Jarrett as resident site manager was required to live at the complex, and therefore her time outside of normal office hours was "waiting time" that counts as administrative time in determining whether her "primary duty" was administrative. ERC relies on Reich v. Avoca Motel Corp., 82 F.3d 238 (8th Cir. 1996), where we held that motel managers' waiting time counted as exempt time in determining (under the long test) whether they spent at least sixty percent of their time performing exempt administrative duties. But this case is factually distinguishable from

Avoca. Only time spent working is considered in determining an employee's primary duty for FLSA exemption purposes. See, e.g., 29 C.F.R. § 541.2(d); see also § 541.206. Whether waiting time is work time under the FLSA is a fact-intensive question thoroughly addressed in the regulations. See 29 C.F.R. §§ 785.14-.23. Those regulations create a presumption that "[a]n employee who resides on his employer's premises on a permanent basis . . . is not considered as working all the time he is on the premises." 29 C.F.R. § 785.23. Here, ERC did not present evidence overcoming that presumption and did not object when the jury instructions failed to include the issue of waiting time in the primary duty instruction. In these circumstances, ERC's belated suggestion that some or all of Jarrett's unpaid, non-office hours were FLSA waiting time that the jury should have classified as exempt time does not undermine the jury's verdict that Jarrett was a non-exempt employee.

B. Did ERC Commit a "Willful" FLSA Violation? In 1966, Congress modified the two-year statute of limitations for FLSA enforcement actions by adding: "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Resolving a conflict among the circuits, the Supreme Court defined a "willful" violation as one where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Here, the jury found ERC's violation to be "willful." On appeal, ERC argues it is entitled to judgment as a matter of law on this issue. We disagree.

At trial, Jarrett presented evidence pointing toward a willful violation. She introduced portions of ERC's Policy Manual stating that employees "are classified as non-exempt employees or exempt employees," that salaried non-exempt employees "will be paid . . . overtime in accordance with the law," and that "[t]he exempt or non-exempt status of each employee will be determined by the Vice President of Finance Administration." Jarrett testified that two immediate supervisors said she would not be paid overtime and instructed her to record only forty hours per week on her time

sheets. Another former site manager, Nelda Beasley, testified that she also was told ERC would not pay overtime despite the fact that she was listed as a non-exempt employee "on my hiring paperwork."

ERC's response to Jarrett's evidence that it recklessly disregarded its FLSA obligations was to ignore the issue. No defense witness testified as to how individual site managers were classified as exempt or non-exempt employees, or how Sandra Jarrett was classified at either of her site manager positions. No defense witness contradicted, or attempted to explain, the testimony of two former site managers that they were told, categorically, by two regional supervisors, that ERC would not pay overtime -- a generalization in clear conflict with the Policy Manual's recognition that this is a fact-intensive determination. On this record, there is ample basis for a reasonable jury to find that ERC willfully violated the FLSA's overtime requirements.

C. Is Jarrett Entitled to Liquidated Damages? The FLSA provides for liquidated damages equal to the amount of actual damages. See 29 U.S.C. § 216(b). In 1947, the statute was amended to provide that the court in its discretion may award no liquidated damages or reduced liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to [FLSA liability] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. An award of liquidated damages "is mandatory unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA." Braswell v. City of El Dorado, 187 F.3d 954, 957 (8th Cir. 1999). In this case, Jarrett appeals the district court's finding of good faith and the exercise of its discretion not to award liquidated damages.

Historically, we have reviewed the district court's finding of good faith under the clear error standard of review. See Herman v. Roosevelt Fed. Sav. & Loan Ass'n, 569 F.2d 1033, 1035 (8th Cir. 1978). That deference to the district court's resolution of the liquidated damages issue is consistent with Congress's intent in enacting the good faith

defense.  See Lorillard v. Pons, 434 U.S. 575, 581 n.8 (1978).  However, the standard of review on appeal becomes less clear when the jury, for statute of limitations purposes, has found a willful violation applying the Supreme Court's restrictive definition of willfulness adopted in McLaughlin v. Richland Shoe.  At least two circuits have now concluded that a jury finding of willfulness *requires* the court to award liquidated damages.  As Judge Ralph Guy explained in his concurring opinion in EEOC v. City of Detroit Health Dept., 920 F.2d 355, 360 (6th Cir. 1990):

> Under the [McLaughlin] standard, the employer will not be deemed to have acted willfully unless it knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA.  With that definition, it is hard to mount a serious argument that an employer, found to have acted willfully, could nonetheless still be found to have acted in good faith.

Accord Brinkman v. Department of Corrections, 21 F.3d 370, 372-73 (10th Cir.), cert. denied, 513 U.S. 927 (1994).  ERC argues that we implicitly declined to follow these cases in EEOC v. Cherry-Burrell Corp., 35 F.3d 356, 363-64 (8th Cir. 1994), but in that case the district court's findings of non-willfulness and good faith were internally consistent.

We agree with Judge Guy that "it is hard to mount a serious argument" that an employer who has acted in reckless disregard of its FLSA obligations has nonetheless acted in good faith.  Though we decline to go so far as to rule out the possibility of good faith and willfulness in an unusual case, we conclude that a district court's finding of employer good faith in the face of a jury's presumptively contrary finding of willfulness requires close scrutiny on appeal.  In this case, as we have observed, ERC offered no evidence of non-willfulness or good faith, despite having the "affirmative burden to show both subjective good faith and objective reasonable grounds for belief of compliance."  McKee v. Bi-State Dev. Agency, 801 F.2d 1014, 1020 (8th Cir. 1986).  The district court's good faith finding was stated in conclusory fashion with no

explanation. We conclude that finding was clearly erroneous. Therefore, the court abused its discretion in refusing to award Jarrett $11,970.08 in liquidated damages.

## II. The Wrongful Discharge Issue.

Jarrett was an "at-will" employee who could be fired at any time, with or without cause. However, Arkansas law recognizes a cause of action for wrongful discharge if an at-will employee "is fired in violation of a well-established public policy of the state." Sterling Drug, Inc. v. Oxford, 743 S.W.2d 380, 385 (Ark. 1988). A claim that public policy has been violated will lie "if an employer discharges an employee for reporting a violation of state or federal law." Id. at 386.

ERC concedes that Jarrett was fired because she reported but could not conclusively prove that her supervisor had manipulated the waiting list for federally subsidized apartments, which is a violation of federal regulations. But ERC argues that Jarrett cannot base a wrongful discharge claim on this public policy violation because she was a participant in the wrongdoing. ERC admits it has no Arkansas authority supporting this contention. In Webb v. HCA Health Servs. of Midwest, Inc., 780 S.W.2d 571, 573-74 (Ark. 1989), the court reversed the grant of summary judgment and ordered trial of a former employee's claim that she had been discharged for reporting that she had been ordered to falsify regulatory compliance documents. The court did not discuss whether, if the employee had participated in falsifying documents, that would preclude the wrongful discharge claim. We conclude the Supreme Court of Arkansas would *not* hold as a matter of law that an employee's participation in a public policy violation, under duress, precludes a claim for wrongful discharge under the doctrine adopted in Sterling Drug. Thus, Jarrett's claim was properly submitted to the jury, and there is sufficient evidence to support its finding of wrongful discharge.

### III. The Attorneys' Fee Issue.

Following entry of judgment in her favor, Jarrett filed a motion to recover $36,360 in attorneys' fees as the prevailing party on her FLSA and wrongful discharge claims. The district court awarded $21,816 as a reasonable fee and later denied Jarrett's motion for reconsideration of the fee award under the FLSA and the Arkansas statute that permits discretionary fee awards in contract cases, see Ark. Code Ann. § 16-22-308. In her cross appeal, Jarrett argues that she is entitled to the full fee requested. We review the award for abuse of discretion under both the FLSA and Arkansas law. See Herman, 569 F.2d at 1036; Caplener v. Bluebonnet Milling Co., 911 S.W.2d 586, 591 (Ark. 1995). The district court expressly considered the relevant factors in making a fee award. Jarrett complains that the court improperly considered her contingent-fee agreement with her attorneys, but that factor was considered as well in Chrisco v. Sun Indus., Inc., 800 S.W.2d 717, 719 (Ark. 1990). We conclude the fee award was not an abuse of the district court's substantial discretion.

The judgment of the district court is reversed and the case is remanded with instructions to award Jarrett liquidated damages under the FLSA in the amount of $11,970.08. In all other respects, the judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-