# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3322
_____

Jeffrey Karlson

*Plaintiff - Appellant*

v.

Action Process Service & Private Investigations, LLC, et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 10, 2017
Filed: June 26, 2017

_____

Before RILEY, Chief Judge,[1] LOKEN and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

In 2007, college student Jeffrey Karlson began serving legal process for Action Process Service & Private Investigations, LLC ("APS"), a new company that owner Loretta Foster was running out of her mobile home. Karlson signed a Process Server

---

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

Agreement reciting that he "is an independent contractor with respect to [APS]." Seven years later, Karlson began serving process for an APS competitor and soon filed this lawsuit against APS and Foster to recover unpaid overtime wages allegedly owed under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, *et seq.* After a two-day trial, the jury returned a verdict that Karlson was not an employee of APS or Foster. Karlson filed a renewed motion for judgment as a matter of law. The district court[2] adopted the jury's conclusion, denied the renewed motion, and entered judgment in favor of APS and Foster. Karlson appeals, arguing (1) the undisputed facts show that Karlson was defendants' employee as a matter of law, and (2) the district court abused its discretion in excluding evidence of the amount of defendants' business expenditures. We affirm.

## I.

The FLSA states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours" without paying one-and-one-half times the regular rate for any excess hours. 29 U.S.C. § 207. The critical issue is whether Karlson was an employee, as opposed to an independent contractor, when working as an APS process server. Like many federal statutes, the FLSA defines "employee," in circular fashion, as "any individual employed by an employer." § 203(e)(1). But the FLSA also defines "employ" as meaning "to suffer or permit to work," § 203(g), a broad definition derived from child labor statutes. See Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947). While FLSA wage and hour requirements do not apply to true independent contractors, see id. at 729, this broad definition of employ "stretches the meaning of 'employee' to cover some parties who might not

_____

[2]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

qualify as such under a strict application of traditional agency law principles." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992).

Rather than the common law test Darden adopted for determining whether a worker is an employee or an independent contractor under many federal statutes, "[t]he test of employment under the [FLSA] is one of economic reality." Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 301 (1985) (quotation omitted).[3] That the contracts between Karlson and APS labeled Karlson an independent contractor may be relevant but is not controlling. Rutherford, 331 U.S. at 729. In United States v. Silk, 331 U.S. 704, 716 (1947), a Social Security Act case decided the same day as Rutherford, the Court observed:

> Probably it is quite impossible to extract from the statute a rule of thumb to define the limits of the employer-employee relationship. The Social Security Agency and the courts will find that degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required in the claimed independent operation are important for decision. No one is controlling nor is the list complete.

---

[3]Karlson asserted unpaid overtime claims under both the FLSA and the AMWA. The definition of employee in the AMWA tracks the FLSA -- "any individual employed by an employer." Ark. Code Ann. § 11-4-203(3). The AMWA expressly excludes independent contractors and defines independent contractor as "any individual who contracts to perform certain work away from the premises of his or her employer, uses his or her own methods to accomplish the work, and is subject to the control of the employer only as to the result of his or her own work." §§ 11-4-203(3)(E), -203(6). The Arkansas Administrative Code provides that the Department of Labor "may rely on . . . federal precedent established under the Fair Labor Standards Act in interpreting and applying the provisions of [the AMWA] . . . except to the extent a different interpretation is clearly required." § 010.14.1-112. The parties and the district court agreed that the same analysis of this issue applies to Karlson's claims under the FLSA and the AMWA.

In resolving this issue under the FLSA, many courts have adopted this passage as a multi-factor "economic realities" test, though neither the Supreme Court nor this court has ever held that it is the governing standard.

Whatever test is applied, deciding whether Karlson was an employee under the FLSA involves questions of fact -- the precise nature of his duties and relationship with the alleged employer -- but the ultimate question of "[w]hether or not an individual is an 'employee' within the meaning of the FLSA is a legal determination rather than a factual one." Donovan v. Trans World Airlines, Inc., 726 F.2d 415, 417 (8th Cir. 1984). This rule, derived from governing Supreme Court decisions, has caused considerable confusion in the trial and appeal of FLSA cases. See, e.g., Jarrett v. ERC Props., Inc., 211 F.3d 1078, 1081-82 (8th Cir. 2000).

## II.

In this case, at the close of evidence, the district court denied Karlson's motion for judgment as a matter of law and decided, without objection by any party, to submit the employee/independent contractor issue to the jury. Jury Instruction No. 6 stated that the jury "must determine" whether Karlson was "employed" by either or both defendants, or was an "independent contractor," as defendants alleged. Paraphrasing the "economic realities" test from Silk, the instruction provided six factors the jury "should consider" -- (i) the degree of control exercised by the alleged employer over the business operations; (ii) the relative investments of the alleged employer and employee; (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer; (iv) the skill and initiative required in performing the job; (v) the permanency of the relationship; and (vi) the degree to which the alleged employee's tasks are integral to the employer's business. The instruction concluded: "No one factor alone should decide the question; instead, you should consider the economic realities of the entire relationship between the parties based on these factors as a whole." The verdict form told the jury to decide whether Karlson was employed

-4-

by APS; whether Karlson was employed by Foster; and, if the jury answered "Yes" to either question, how many hours Karlson worked each of the weeks at issue. Karlson did not object to submitting the employee/independent contractor issue to the jury. He raises no objection on appeal to either Instruction No. 6 or the verdict form.

During its deliberations, the jury submitted a question asking whether it could find that Karlson was an employee, yet was paid what he was owed. After the court discussed with counsel how the question should be answered, counsel for Karlson said, "I think we're all on the same page as to what they should be told." The court then instructed the jury, without objection:

> [Y]ou have to decide the factual matter whether or not Mr. Karlson was an employee or an independent contractor. And once you've made that factual determination, you may or may not need to move on to the damages. Based on the [answer] to those questions, I'm going to make a determination as a matter of law what that means. So I don't get to make the determination whether or not he was an employee or a general [sic] contractor, but once you make that determination for me, the law kicks in as to what happens from then on.

The jury then returned a verdict answering "no" to whether Karlson was employed by defendant APS or by Foster, and Karlson filed his renewed motion for judgment as a matter of law.

When a district court decides the legal question whether plaintiff was an employee or independent contractor after a bench trial, we review that ultimate question of law *de novo* and any fact findings as to the nature of the relationship for clear error. See, e.g., Reich v. Stewart, 121 F.3d 400, 404 (8th Cir. 1997); accord Herman v. Express Sixty-Minutes Delivery Serv., Inc., 161 F.3d 299, 303 (5th Cir. 1998). Likewise, if the court conducts a jury trial and obtains from the jury special findings regarding one or more of the "economic realities" factors from Silk (or the

common law factors from Darden), those findings will be reviewed for clear error. But the ultimate question of whether the plaintiff was an employee for FLSA purposes remains an issue of law, and if the court submits that question to the jury, it "may not ignore its duty to review that aspect of the jury's verdict *de novo*." Ernster v. Luxco, Inc., 596 F.3d 1000, 1006 (8th Cir. 2010).

Here, although the district court instructed the jury to "consider" the widely-used economic realities factors, it did not request special findings regarding any aspect of the parties' relationship or Karlson's specific duties as an APS process server. Rather, with the parties' consent, the district court submitted only the ultimate question of whether Karlson was an employee and told the parties and the jury, "[s]o I don't get to make the determination whether or not he was an employee." Then, in denying Karlson's renewed motion for judgment as a matter of law, the district court "adopted" the jury's conclusion. In effect, then, we are reviewing a general jury verdict on an issue of law. Fortunately, because this issue is both confusing and not uncommon, we have controlling precedent telling us how to proceed.

If a district court with the parties' consent submits an ultimate FLSA issue of law to the jury, such as whether plaintiff was an employee or an independent contractor, and then adopts the jury's verdict, "we must affirm on this issue if the evidence, viewed most favorably to the jury's verdict, is sufficient to support that verdict." Jarrett, 211 F.3d at 1082; accord Guyton v. Tyson Foods, Inc., 767 F.3d 754, 760-61 (8th Cir. 2014); Ernster, 596 F.3d at 1006 & n.7; Johnson v. Unified Gov't of Wyandotte, 371 F.3d 723, 728-29 (10th Cir. 2004). Contrary to Karlson's argument on appeal, we do not independently analyze the various economic realities factors the jury was instructed to consider, because neither the jury nor the district court made specific findings relating those factors to their ultimate determination. Cf. Everest Capital Ltd. v. Everest Funds Mgmt., LLC, 393 F.3d 755, 760 (8th Cir. 2005). Here, Karlson proposed that the ultimate employee issue be submitted to the jury and did not object to Instruction No. 6 or to the general verdict form. Thus, while he is correct

that whether he was an "employee" is an issue of law under the FLSA, he failed to preserve the entirely different legal analysis he urges on appeal. See Lopez v. Tyson Foods, Inc., 690 F.3d 869, 879-80 (8th Cir. 2012).

**III.**

Reviewing the trial evidence under the deferential standard adopted in Jarrett, the jury verdict adopted by the district court must be affirmed. The evidence at trial, much of it undisputed, permitted the jury to find that clients submitted service-of-process requests to APS, which notified process servers of each opportunity. Karlson decided which assignments he was willing to accept. APS contracted with Karlson to complete each assignment he accepted, paying him a flat rate per paper served after Karlson turned in an affidavit of service. Assignments carried time commitments that varied from a few minutes to several hours, and APS occasionally updated assignments to "priority" status. Karlson picked up papers to be served at the APS office and used his own car, phone, and computer to complete service of process. He was not required to report for work and did not punch a time clock or otherwise report his hours worked to APS. He provided status updates to APS through an online application, emails, and calls to office staff. Foster testified that APS did not tell process servers when to work, process servers did not report daily schedules to APS, and Karlson did not inform APS in advance when he would be unavailable to serve process. APS never disciplined process servers for failing to work.

A 2011 Work for Hire/Independent Contractor Agreement governed the parties' relationship during the period Karlson sought unpaid overtime damages. The Agreement provided that APS would not provide fringe benefits, contribute to worker's compensation, or withhold federal or state taxes for Karlson, but would provide a Form 1099-MISC showing the amount it paid Karlson for his services each year. Karlson filed a Schedule C (Profit or Loss From Business) with his annual federal income tax Form 1040 on which he deducted his process serving expenses,

resulting in minimal or no personal income tax liability. These factors are "[e]specially indicative of an independent-contractor relationship." Alexander v. Avera St. Luke's Hosp., 768 F.3d 756, 762 (8th Cir. 2014).

Starting in 2012, Karlson began serving process in Arkansas counties more distant from his home, driving to a county, staying in a hotel, and serving papers the following day. He complained to Foster in 2013: "I am finding that my expenses are considerably higher and this is an issue. Certain counties are simply unprofitable and not worth the time, effort, and expense to get to. . . . As an independent contractor, I should be able to maximize my best interests. . . . If I *do not* get Faulkner County jobs then I will change my schedule from 7 days a week to 5 days a week and I will take weekends off. I will also limit the counties I will serve by distance to the following counties . . . ."

Based on these findings, a reasonable jury applying the "economic realities" test set forth in Instruction No. 6 could conclude that Karlson was an independent contractor. As the district court explained in adopting the jury's conclusion:

> In the end, the fact that Plaintiff could choose to accept assignments or refuse them based upon his personal criteria, that he could leave for vacation without permission from the Defendant, that he accepted assignments from other companies at one time, and served process at hours which were convenient to him and not controlled by the Defendant tipped the balance of the economic realities test toward the conclusion that Plaintiff was an independent contractor. The Court adopts the jury's conclusion and finds that Plaintiff was an independent contractor.

On appeal, Karlson proffers a long list of allegedly undisputed facts that in his view support the conclusion that he was an employee for FLSA purposes as a matter of law. He derives many of these facts from his own trial testimony, which the jury was entitled to disregard. See Stevenson v. Union Pacific Ry., 354 F.3d 739, 745 (8th

Cir. 2004). At trial, the defense attacked Karlson's credibility by referring to a Texas felony conviction for fraudulent use and possession of identifying information, which he failed to report on appointment documents certifying that he had not been convicted of a crime involving dishonesty or false statement.

Like the district court, we conclude the evidence at trial was sufficient to support the jury's conclusion that Karlson was an independent contractor under the FLSA, applying the "economic realities" test in Instruction No. 6.

## IV.

Karlson further argues that the district court abused its discretion in excluding evidence of how much APS deducted each year in business expenses. Instruction No. 6 included in the factors the jury was to consider "the relative investments of the alleged employer and employee." Prior to trial, the district court's rulings on motions in limine included:

> The parties may introduce evidence regarding [Karlson's] payment for serving process for [APS]. The parties may also present evidence as to which party is responsible for the costs of investment in the business. Evidence as to the dollar amount of the investment is precluded.

Before the jury was chosen, Karlson urged the court to reconsider this exclusion:

> [Counsel for Karlson]: The evidence that I anticipate would be that when Mr. Karlson is on the stand, he will testify that he had 30 or 40,000 dollars a year in automobile expenses, so with that evidence in, I had planned to ask . . . Ms. Foster a similar question how much did you deduct in expenses, about $900,000, so the jury would have that ratio.
>
> THE COURT: I don't find that that's relevant.

* * * * *

> I'm not going to let you billboard large numbers without any context of what they are. And if you say do you likewise deduct expenses for your automobiles and she says yes, that's fine, but . . . I'm not going to let you make a gross number comparison between his figures and the company's figures to try to make it look like he's the little guy and they're the big guy.

"A district court has broad discretion whether to admit evidence, and we will not reverse absent a clear and prejudicial abuse of that discretion." SEC v. Shanahan, 646 F.3d 536, 548 (8th Cir. 2011) (quotation omitted). There was no such abuse here. We agree with the district court that comparing the amount Karlson spent on his automobiles or deducted on Schedule C of his tax returns with Foster's total expenses in operating APS has little relevance to determining whether Karlson's self-controlled activity in accepting and completing APS process server assignments made him an employee or an independent contractor as a matter of economic reality. Large corporations can hire independent contractors, and small businesses can hire employees. Thus, the district court did not abuse its discretion in deciding it would permit questions addressing the nature of the parties' relative investments but would not allow Karlson to "billboard large numbers" that would create the danger of unfair prejudice.

The judgment of the district court is affirmed.

_____