# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 21-2961

———————————————

Martin J. Walsh, Secretary of Labor, United States Department of Labor

*Plaintiff - Appellee*

v.

Alpha & Omega USA, Inc., doing business as Travelon Transportation;
Viktor Cernatinskij, an individual

*Defendants - Appellants*

———————————

Appeal from United States District Court
for the District of Minnesota

———————————

Submitted: March 17, 2022
Filed: July 14, 2022

———————————

Before GRASZ, STRAS, and KOBES, Circuit Judges.

———————————

GRASZ, Circuit Judge.

The United States Secretary of Labor ("Secretary") sued Alpha & Omega USA, Inc., d/b/a Travelon Transportation and its owner (together "Travelon") for violating the Fair Labor Standards Act (FLSA). The district court granted summary judgment in favor of the Secretary. Travelon appeals, arguing the district court erred in granting the Secretary's motion. Because there are genuine disputes of material

fact, we reverse the district court's grant of summary judgment in favor of the Secretary and remand for further proceedings.

## I. Background

Viktor Cernatinskij is the founder, sole owner, and chief executive officer of Travelon. Travelon is a Minnesota corporation that facilitates non-emergency medical transportation—known as special transportation services ("STS")—in the Minneapolis–St. Paul area. Travelon is registered with the Minnesota Health Care Programs (MHCP) and the Minnesota Department of Transportation (MNDOT).

Travelon hires drivers to transport patients to and from medical appointments. Travelon provides equipment such as vans and electronic tablets to drivers and pays for costs such as internet service and insurance for the vans. Customers pay Travelon for the transportation services, and Travelon distributes the entire sum paid by the customers to the drivers. Drivers are then responsible for paying Travelon weekly expenses such as a dispatch fee, 35% of the commissions generated by the drivers' weekly trips (when the drivers' weekly income exceeds $300), insurance fees, vehicle lease fees, vehicle maintenance fees, and a tablet rental plus added costs for any additional gigabytes of data used. Travelon generates its revenue from these fees paid by the drivers.

Travelon's dispatch service assigns trips to drivers through an application called "MediRoutes" on the drivers' tablets. The app monitors the drivers' GPS locations and their availability. Dispatch also encourages drivers to notify dispatch when they are available to take trips. Dispatch then assigns a trip to the driver and provides instructions through the app such as pick-up/drop-off times and locations. Drivers set their own schedules and can change their schedules daily. Travelon, however, only provides dispatch services 5:00 a.m.–6:00 p.m. Monday–Friday, and 5:00 a.m.–4:00 or 5:00 p.m. on Saturdays.

Travelon classifies its drivers as independent contractors and pays them as such. After investigating Travelon's FLSA compliance, however, the Department of Labor's Wage and Hour Division determined Travelon's drivers were employees. The Secretary sued Travelon and Cernatinskij on behalf of twenty-one drivers, alleging the drivers were employees and that Travelon violated the FLSA by failing to pay the minimum wage to eleven drivers, failing to pay overtime to twenty-one drivers, and failing to maintain proper time records.

The parties filed cross motions for summary judgment. The district court granted summary judgment in favor of the Secretary and denied Travelon's summary judgment motion. The district court held Travelon's drivers were employees and that Travelon had violated the FLSA by failing to pay drivers minimum wage and overtime and not complying with the FLSA's recordkeeping requirements. The district court awarded damages in accordance with the Secretary's computation of back wages which it found were reasonable. The district court also awarded liquidated damages because Travelon failed to show good faith and reasonable grounds for believing it was not in violation of the FLSA.

## II. Analysis

Travelon appeals the district court's grant of summary judgment in favor of the Secretary. Specifically, Travelon argues the district court erred in classifying the drivers as employees under the FLSA, in calculating backpay, and in its award of liquidated damages. Because we conclude there are genuine issues of material fact as to whether an employment relationship existed between Travelon and its drivers, we need only address this first issue.

### A. Employer/Employee Relationship under FLSA

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee[,]" 29 U.S.C. § 203(d), an

"employee" as "any individual employed by an employer[,]" § 203(e)(1),[1] and "employ" as "to suffer or permit to work," § 203(g). This broad definition of employ "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Karlson v. Action Process Serv. & Priv. Investigations, LLC*, 860 F.3d 1089, 1092 (8th Cir. 2017) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)).

When an employment relationship is in question, many courts decide whether workers are independent contractors or employees by applying the multi-factor "economic realities" test. *Id.* The parties, as well as the district court, followed these courts and used the economic realities test here.[2] We assume without deciding that the economic realities test is appropriate in determining whether a worker is an employee or independent contractor under the FLSA. This test examines six factors regarding the economic realities of the working relationship: (1) "the degree of control exercised by the alleged employer over the business operations;" (2) "the relative investments of the alleged employer and employee;" (3) "the degree to which the alleged employee's opportunity for profit and loss is determined by the employer;" (4) "the skill and initiative required in performing the job;" (5) "the permanency of the relationship;" and (6) "the degree to which the alleged employee's tasks are integral to the employer's business." *Id.* at 1093.

---

[1]The statutory definition of employer and employee provides certain exceptions not applicable here. *See* 29 U.S.C. § 203(d) and (e)(1)–(4).

[2]The FLSA's definition of "employ," which is to "suffer or permit to work," 29 U.S.C. § 203(g), was borrowed from early child-labor laws. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947). Our job in interpreting statutes is to determine what statutes meant "at the time of enactment," *Tanzin v. Tanvir*, 141 S. Ct. 486, 491, 493 (2020), which in this case would require looking back at analogous provisions in these older child-labor laws. By examining their meaning, it might become clear whether the six-factor economic-realities test accurately reflects the suffer-or-permit-to-work definition from the FLSA.

## B. Standard of Review

Travelon argues the district court erred in granting summary judgment for the Secretary because there are issues of material fact as to whether an employment relationship existed between Travelon and its drivers. We review a district court's grant of summary judgment de novo, "viewing the 'facts and inferences . . . in the light most favorable to the nonmoving party.'" *Vandewarker v. Cont'l Res., Inc.*, 917 F.3d 626, 629 (8th Cir. 2019) (quoting *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996)). The moving party bears the burden of showing "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could lead a rational trier of fact to find for the nonmoving party, there is a genuine issue for trial." *Gray v. FedEx Ground Package Sys., Inc.*, 799 F.3d 995, 999 (8th Cir. 2015).

While the precise nature of the working relationship—as examined by means of the factors—involves questions of fact, the "ultimate question of '[w]hether or not an individual is an "employee" within the meaning of the FLSA is a legal determination rather than a factual one.'" *Karlson*, 860 F.3d at 1092–93 (alteration in original) (quoting *Donovan v. Trans World Airlines, Inc.*, 726 F.2d 415, 417 (8th Cir. 1984)). In practice, disputed factual issues that may affect this legal determination can be submitted to the jury as special jury questions. *See id.* at 1093–94; *see also* Eighth Circuit Model Jury Instruction (Civil) 16.00 and 16.06.

Here, the district court resolved the case by granting summary judgment to the Secretary, thus indicating there were no material factual disputes. We disagree. Viewing the evidence in the light most favorable to Travelon, issues of material fact remain as to the working relationship between Travelon and its drivers. Specifically, Travelon has offered evidence from which a rational trier of fact could find the "control," "profits and losses," and "integral to business" factors weigh in favor of the drivers being independent contractors. For this reason, we remand the case so these factual disputes can be resolved by the ultimate trier of fact.

## 1. Control

Examination of the control factor of the economic realities test reveals genuine disputes exist preventing summary judgment.  In general, this factor considers the alleged employer's right to control the way work is performed.  *See, e.g.*, *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 145 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 2629 (2021); *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1060 (6th Cir. 2019); *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 241 (4th Cir. 2016).  Such control can be demonstrated in several ways.  For example, the district court here found Travelon exercised control by assigning trips, pressuring drivers to accept trips offered by dispatch, regulating the times at which drivers could provide services, requiring the drivers to obtain permission to take a break, tracking drivers through GPS location monitoring, and requiring drivers to submit travel logs.  Indeed, other courts have used similar manifestations of control to determine the degree of control the alleged employer had over its workers.  *See Razak*, 951 F.3d at 146 (considering whether Uber sets hours for drivers when evaluating degree of control); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 381 (5th Cir. 2019) (considering whether workers were free to accept or reject projects, whether workers were required to ask permission to leave, and where and when workers needed to report for duty); *Off Duty Police Servs.*, 915 F.3d at 1060–61; *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1235 (10th Cir. 2018); *McFeeley*, 825 F.3d at 241–42 (considering workers' ability to determine their own schedules, mandatory guidelines during working hours, ability to set fee for services, and ability to perform services at other establishments).

The district court improperly engaged in fact finding concerning these details, however, and did not consider the evidence in the light most favorable to Travelon. For example, there is competing evidence as to whether drivers could reject trip assignments.  The Secretary argues Travelon pressured drivers to accept assignments by calling drivers regularly when they were off work.  The Secretary also notes

driver Konstantin Derevyanko testified that, although there were no direct threats made if a driver declined a trip, he sensed Travelon was unhappy if he declined trips.

But there is also evidence Travelon allowed drivers to decline trip assignments. Both Cernatinskij and Maria Cernatinschi—Travelon's long-time dispatcher—testified that drivers were allowed to turn down trips without any penalization. And Derevyanko testified that, on two or three occasions, he declined trips that were offered to him. This competing evidence requires the weighing of evidence and ultimately making a credibility determination—a role reserved for the trier of fact. *Nunn v. Noodles & Co.*, 674 F.3d 910, 914 (8th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Likewise, there is a genuine dispute as to the extent of control Travelon had over the drivers' hours. It is undisputed Travelon generally provided dispatch services only between 5:00 a.m. and 6:00 p.m. Monday through Friday, and 5:00 a.m. and 4:00 or 5:00 p.m. on Saturday.

This fact, however, must be weighed by the trier of fact with other relevant evidence. For example, Cernatinskij testified drivers were able to set their own schedule and could change their schedule daily. Cernatinschi also testified drivers could tell dispatch their preferred start and end times for their shifts. Additionally, she testified that dispatch never scheduled drivers outside of their preferred hours. These facts show the drivers exercised a level of autonomy in determining their work hours creating a genuine dispute as to Travelon's degree of control.

Common sense may also come into consideration. Travelon provides non-emergency medical transportation. Drivers can operate anytime dispatch services are available, which include all normal non-emergency business hours. The fact Travelon does not have dispatch on duty at 3:00 a.m. is not surprising given that

non-emergency medical appointments would be rare at such hours. Again, viewing the evidence in the light most favorable to Travelon, a rational trier of fact could find the drivers' abilities to set their own schedules during working hours demonstrate a lack of control. *See Razak*, 951 F.3d at 146 (precluding summary judgment where Uber demonstrated it lacked the right to control when its drivers must drive). Thus, the jury's involvement is necessary to resolve this factual dispute.

## 2. Profits and Losses

The profits and losses factor also illustrates genuine issues of material fact are still in dispute. Under this factor, courts generally consider whether workers had control over profits and losses depending on their "managerial skill." *See, e.g.*, *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 231 (3d Cir. 2019); *Off Duty Police Servs.*, 915 F.3d at 1059. A worker exercising managerial skills such as setting his own hours and rates along with the ability for the worker to earn additional income through his own initiatives indicate control over profits and losses. *See Razak*, 951 F.3d at 146; *Verma*, 937 F.3d at 231; *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1317 (11th Cir. 2013). In other words, facts demonstrating that a worker can use "his managerial skill to 'improve his efficiency such that he c[an] complete more' jobs" weigh in favor of independent contractor status. *Off Duty Police Servs.*, 915 F.3d at 1059 (alteration in original) (quoting *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 813 (6th Cir. 2015)).

It is undisputed Travelon set the drivers' rates and facilitated trip assignments given to drivers through the MediRoutes driving app. These facts demonstrate Travelon limited the drivers' opportunity for profit or loss. *See Razak*, 951 F.3d at 146–47 (stating Uber limited its drivers' opportunities for profit or loss by deciding the fare, which driver receives trip requests, whether to refund or cancel a passenger's fare, and the driver's territory).

But Travelon has also demonstrated facts that suggest the drivers were able to earn additional income through their own initiatives. For example, Cernatinskij

stated that drivers could transport multiple customers at a time to make trips more profitable. *See id.* at 146 (noting drivers' abilities to determine "when, where, and how to utilize the Driver App to obtain more lucrative trip requests and to generate more profits" evidenced independent contractor status). Drivers could also maximize their profit by using their own vehicles and tablets rather than leasing from Travelon.

Moreover, the parties offer competing testimony over whether drivers could provide services independent of their work for Travelon. Cernatinschi testified that at least three drivers have provided medical transportation on their own and not through Travelon. These drivers also provided non-medical transportation using the vans leased from Travelon without using Travelon or Cernatinschi's dispatching services. Cernatinskij, however, testified that it would be impossible for drivers to provide STS on their own or for another provider while also driving for Travelon. Thus, a factual dispute remains as to whether drivers could provide services independently to generate more profit. *See id.* at 147 (considering Uber drivers' abilities to drive for competitors a material fact in determining the opportunity for profit or loss).

A rational fact finder could find the drivers are able to transport multiple customers, use their personal vehicles, and perform services independent of their work with Travelon which would ultimately affect whether this factor weighs in favor of an independent contractor relationship between Travelon and its drivers. Thus, a trier of fact needs to weigh the competing evidence to resolve these factual disputes.

### 3. Integral to Business

Lastly, genuine disputes of material fact remain as to whether drivers are integral to Travelon's business. This factor turns "on whether workers' services are a necessary component of the business." *Paragon Contractors*, 884 F.3d at 1237 (quoting *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1443 (10th Cir. 1998)).

Here, the Secretary argues the drivers are integral to Travelon's business. The Secretary points to evidence that Travelon refers to itself as an STS provider, is registered with Minnesota as an STS provider, and that Travelon's customers depend on Travelon's drivers to perform services.

But Travelon seeks to distinguish itself from actual STS providers. Travelon describes itself as an "intermediary company that supports the drivers' transportation businesses" that only makes revenue by leasing vehicles and equipment to drivers and selling dispatch subscriptions. Travelon bills customers for the STS but then pays drivers the entire amount collected from the customers for the trip. Drivers then must pay Travelon the various fees discussed earlier associated with leasing the vehicle, dispatch fees, tablet rental, and insurance fees. Thus, Travelon's revenue is generated entirely from the drivers—not the passengers.

Whether Travelon is indeed an STS provider or merely a technology company that supports the drivers' STS businesses is a disputed material fact that must be resolved. *See Razak*, 951 F.3d at 147 n.12 (holding evidence underlying Uber's argument "that it is a technology company that supports drivers' transportation businesses, and not a transportation company that employs drivers" raised a genuine issue of material fact precluding summary judgment). A rational trier of fact could find Travelon's characterization of its business model persuasive, thus finding the drivers are not integral to Travelon's business. For this reason, the district court erred in concluding the drivers were integral to Travelon's business as a matter of law.

In sum, the award of summary judgment was premature. While the Secretary has shown evidence supporting an employment relationship between Travelon and its drivers, Travelon has also shown evidence of an independent contractor relationship. These competing narratives must be resolved before the district court makes its legal conclusion as to whether an employment relationship existed between Travelon and its drivers.

## III. Conclusion

For the reasons set forth above, we reverse the district court's summary judgment order and remand for proceedings consistent with this opinion.

_____